**FEDTRO, INC.**
v.
**UNITED STATES.**
**C.D. 4548; Court No. 71–6–00454.**

United States Customs Court.
June 13, 1974.

Siegel, Mandell & Davidson, New York City (Allan H. Kamnitz and Brian S. Goldstein, New York City, of counsel) for plaintiff.

Carla A. Hills, Asst. Atty. Gen. (Joseph I. Liebman, New York City, trial attorney), for defendant.

NEWMAN, Judge:

The parties in this civil action agree that there is no genuine issue as to any material fact, and have filed cross-motions for summary judgment pursuant to rule 8.2.

The merchandise in issue, described on the invoices as "Model CH–ACD Multi Purpose Deluxe Battery Charger with Silicon Diode", was imported from Japan in 1970 and 1971. The regional commissioner of customs at the port of New York classified the merchandise as "rectifying apparatus", and assessed duty at the rate of 10 or 9 per centum ad valorem, depending upon the date of entry, under item 682.60 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68–9. Plaintiff claims that the imports are properly dutiable at the rates of 8 or 7 [*sic* 6.5] per centum ad valorem, depending upon the date of entry, under the provision in item 688.40, TSUS for electrical articles, not specially provided for.

The parties have filed memoranda of law, affidavits and other documents in support of their respective motions. Additionally, I have before me a representative sample of the merchandise submitted by plaintiff.

I have concluded that the Government's classification was erroneous, and that the merchandise is properly dutiable under item 688.40, TSUS, as claimed by plaintiff. Accordingly, plaintiff's motion for summary judgment is granted; and defendant's cross-motion for summary judgment is denied.

STATUTE INVOLVED

Schedule 6, part 5, TSUS:

> Generators, motors, motor-generators, converters (rotary or static), transformers, rectifiers and rectifying apparatus, and inductors; all the foregoing which are electrical goods, and parts thereof:

| | | |
|---|---|---|
| * | * | * * * * |
| 682.60 | Other | 10% or 9% ad val. |
| | | [depending upon date of entry] |
| * | * | * * * * |
| 688.40 | Electrical articles, and electrical parts of articles, not specially provided for | 8% or 6.5% ad val. |
| | | [depending upon date of entry] |

THE FACTS

The pertinent facts are:

The CH–ACD battery charger is designed to perform two functions: (1) recharge small dry cell batteries, such as those commonly used in flashlights, toys, transistor radios and appliances; and (2) test the degree of charge of 1.5 volt batteries.

The article comprises a plastic housing with a movable cover on the front, which opens and closes for the insertion and removal of batteries. On the front of the article, also, are a red plastic lens (covering a light bulb) designated "CHARGE", *and* a clear plastic lens (covering a light bulb) designated "TEST". Within the housing are movable battery contacts which are connected in a series loop or path, which includes a rectifying circuit and a pair of input terminals. Batteries to be charged are placed between adjacent contacts to receive a charging current. The actual charging of batteries is accomplished through the use of a single diode (rectifier) and a current limiting resistor in what is usually referred to as a "half-wave" rectifying circuit. This rectifying circuit serves to convert alternating current (a. c.) into direct current (d. c.).

As indicated above, the imported article includes a battery testing feature, which can be used to test the charge of

1.5 volt batteries.[1] The testing circuit functions only when the front cover is open, whereas the charging circuit operates only when the front cover is closed. Moreover, the rectifying circuit is inoperative while testing a battery's charge, and the testing circuit is inoperative while using the rectifying circuit.

The battery tester operates without connection to an external power source (viz., without being plugged into an electrical outlet), and does not convert a. c. into d. c.[2]

According to the operating instructions accompanying the imported article, batteries should first be tested to determine whether or not they are rechargeable, as indicated by the presence or absence of illumination on the "TEST" indicator light. Batteries to be tested are inserted into the special section of the article designated "FOR TEST". The degree of illumination on the indicator bulb reveals the condition of the battery and the charging period required. Thus, the operating instructions specify:

"A) If test light glows very brightly —battery is fully charged *and should not be charged at all.*

B) If test light glows with medium brightness, battery needs a 'booster charge' only. Refer to table for charging period, depending on type of battery.

C) If test light is very dim, battery needs a full charge. (see table)

D) If test light fails to light at all —the battery is dead, *and charging should not be attempted.*" [Emphasis added.]

As apparent from the foregoing operating instructions, in certain circumstances the test feature of the article would be utilized, but the charging feature would not be utilized.

Finally, according to the instructions accompanying the article, when the specified time for recharging has elapsed, the battery tester shows whether a recharge was effective.

In summary, the undisputed facts are: The imported articles serve a dual function—charging and testing batteries; the rectifying circuit for conversion of a. c. to d. c. is utilized when charging batteries; and the testing circuit does not rectify (convert a. c. to d. c.).

CONTENTIONS OF THE PARTIES

Defendant contends that the articles are primarily a battery charger (the testing feature being incidental or auxiliary), and therefore, the merchandise is properly dutiable as "rectifying apparatus" under item 682.60, TSUS. In support of its position defendant cites the following cases: Trans-Atlantic Company v. United States, C.A.D. 1088, 471 F. 2d 1397, 60 CCPA 100 (1973); United States v. New York Merchandise Co., Inc., C.A.D. 1004, 435 F.2d 1315, 58 CCPA 53 (1970); United Carr Fastener Corporation v. United States (Northern Screw Corp., Party in Interest), 54 CCPA 89, C.A.D. 913 (1967); J. E. Bernard & Co., Inc. v. United States, 66 Cust.Ct. 362, C.D. 4215 (1971); Fedtro, Inc. v. United States, 65 Cust.Ct. 35, C. D. 4050 (1970); Schick X-Ray Co., Inc. v. United States, 64 Cust.Ct. 430, C.D. 4013 (1970); Astra Trading Corp. v. United States, 56 Cust.Ct. 555, C.D. 2703 (1966).

Plaintiff insists that the testing feature makes the CH–ACD battery charger "more than" a rectifying apparatus, and to buttress its argument cites the following cases: Dollar Trading Corp. v. United States, 468 F.2d 631, 60 CCPA 10, C.A.D. 1074 (1972); United States v. Acec Electric Corp., 474 F.2d 1009, 60 CCPA 113, C.A.D. 1091 (1973); Fedtro, Inc. v. United States, 449 F.2d 1395, 59 CCPA 16, C.A.D. 1028 (1971); Robert Bosch Corp. et al. v. United States, 63 Cust.Ct. 96, C.D. 3881 (1969).

THE ISSUE

The legal question to be determined is whether, regardless of the battery testing feature, the imported article consti-

---

1. Higher voltages will burn out the test indicator bulb.

2. The testing circuit derives power from the battery being tested.

tutes merely "rectifying apparatus", as argued by the Government; or whether the testing element removes the article from that classification because it is "more than" such apparatus, as urged by plaintiff.

### THE CH–ACD BATTERY CHARGER IS "MORE THAN" A RECTIFYING APPARATUS

It is, of course, a fundamental rule in judicial construction of tariff terms than an item which is "more than" a certain article cannot fall within the *eo nomine* provision for that article. United States v. New York Merchandise Co., Inc., *supra*; Servo-Tek Products Co. v. United States, C.A.D. 969, 416 F.2d 1398, 57 CCPA 13, 15 (1969). However, in certain cases merchandise has been held classifiable on the basis of its primary design, construction and function, even though it is capable of performing other auxiliary or incidental operations. See e. g.: Trans-Atlantic Company v. United States, *supra*; United Carr Fastener Corporation v. United States, *supra*; J. E. Bernard & Co., Inc. v. United States, *supra;* Fedtro, Inc. v. United States, 65 Cust.Ct. 35, C.D. 4050 (1970); Schick X-Ray Co., Inc., *supra*; Astra Trading Corp. v. United States, *supra*. Thus, in E. Green & Son (New York), Inc. v. United States, C.A.D. 1032, 450 F.2d 1396, 59 CCPA 31 (1971), respecting the "more than" doctrine, the majority of the appellate court observed (450 F.2d at 1398, 59 CCPA at 34):

> "Only the most general of rules can be ascertained from the previous decisions dealing with the 'more than' doctrine, and it appears that each case must in the final analysis be determined on its own facts. See United Carr Fastener Corp. v. United States, 54 CCPA 89, C.A.D. 913 (1967), and the cases cited therein. *In order to determine if an article is more than that provided for in a particular tariff provision, it is necessary to ascertain the common meaning of the tariff provision and compare it with the merchandise in issue.* It is well established that in determining the common meaning of a term or word used in a tariff provision, court decisions, dictionary definitions, and other lexicographical authorities may be considered." [Emphasis added.]

*Webster's Third New International Dictionary*, 1966 ed., provides the following definitions:

> "rectifier * * * 3: a device (as a vacuum tube) for converting alternating current into direct current. * * *"

> "rectify * * * 8: to make (an alternating current) unidirectional. * * *"

The term "apparatus" was construed by the court in J. E. Bernard & Co., Inc. v. United States, 62 Cust.Ct. 536, 542–543, C.D. 3822, 299 F.Supp. 1129 (1969), aff'd C.A.D. 1009, 436 F.2d 506, 58 CCPA 91 (1971), citing the following definition in *Funk & Wagnalls New Standard Dictionary of the English Language* (1952 ed.):

> "apparatus 1. Any complex device or machine designed or prepared for the accomplishment of a special purpose * * *".

Further, in the Summaries of Trade and Tariff Information, Schedule 6, Volume 10, page 130 (1969), "rectifiers" and "rectifying apparatus" are described by the Tariff Commission as follows:[3]

> "*Rectifiers and rectifying apparatus.*—Rectifiers and rectifying apparatus generally convert AC energy to DC energy, and vary in complexity from a single component, such as a silicon-controlled rectifier, to devices

---

3. The Summaries of Trade and Tariff Information has been referred to as an aid in determining the scope of tariff provisions. See e. g.: American Bristle & Hair Drawing Co., Keer Maurer & Co. v. United States, C.A.D. 1048, 458 F.2d 524, 59 CCPA 104 (1972); Tanross Supply Co., Inc. v. United States, C.A.D. 1000, 433 F.2d 1332, 58 CCPA 26, 31 (1970). See also Lyons Export & Import, Inc. v. United States, C.A.D. 1056, 461 F.2d 830, 59 CCPA 142, 144 (1972).

consisting of certain combinations of components (such as tubes, transistors, capacitors, resistors, and diodes) in such apparatus as battery chargers and DC power supplies. * * *"

Section 85.01 of the Brussels Nomenclature covers, *inter alia,* rectifiers and rectifying apparatus used for converting a. c. into d. c., which includes (Explanatory Notes, vol. 3, chapter 85, p. 928):

"(E) Battery chargers. These consist essentially of rectifiers with associated transformer and current control apparatus".

Plaintiff concedes that the article in issue has a rectifying circuit for *charging* batteries. Defendant, on the other hand, does not dispute that in *testing* the charge of a battery, the article does not rectify or convert a. c. energy to d. c. energy. Hence, it is apparent that the imported merchandise is a multipurpose or combination article having a feature which does not convert a. c. energy to d. c. energy.

The rule respecting the classification of combination or multifunction articles, which is deemed applicable under the facts of this case, was succinctly stated in Robert Bosch Corp., *supra* 63 Cust.Ct. at pp. 103–104:

"The principle is well settled that where an article is in character or function something other than as described by a specific statutory provision—either more limited or more diversified—and the difference is significant, it cannot find classification within such provision. It is said to be more than the article described in the statute. Cragstan Corporation v. United States, 51 CCPA 27, C.A.D. 832 (1963); United States v. The A. W. Fenton Company, Inc., 49 CCPA 45, C.A.D. 794 (1962); Garrard Sales Corp. v. United States, supra [35 CCPA 39, C.A.D. 369 (1947)]; and Hirsch & Co. et al. v. United States, 4 Ct.Cust.Appls. 82, T.D. 33365 (1913). * * *"

In *Bosch,* the court held that a solenoid switch, which performed the *mechanical function* of engaging a motor vehicle starter into gear with the flywheel in addition to the *electrical function* of causing the current to flow from the battery to the ignition system was *more than an electrical switch* under item 685.90, TSUS, since both functions were significant.

In *Fedtro, Inc.* v. *United States,* C.A. D. 1028, 449 F.2d 1395, 59 CCPA 16 (1971), merchandise invoiced as "4-way Flasher Switches for Automobiles" was classified by the Government under the provision for switches in item 685.90, TSUS. The importer claimed that the merchandise was more than a switch and properly dutiable as visual signalling apparatus under item 685.70, TSUS. The article in issue was described by the appellate court as follows (449 F.2d at p. 1396, 59 CCPA at p. 18):

"The imported article is used to connect the front and back signal lamps of an automobile with the flasher circuit for the directional signals, in such a manner that all four lamps flash simultaneously. The article includes a switch which is selectively operative to provide the 4-way flashing action, an indicator light, a capacitor connected across the switch terminal, and a fuse in series circuit with the switch. These elements are disposed in a housing which is adapted for mounting on the dashboard. The indicator light is made up of a red jeweled lens on the housing cooperating with a lamp bulb in a socket disposed within the housing. The socket of the indicator light is so wired that, when the 4-way switch is on, the light flashes simultaneously with the front and back signal lamps. When the 4-way switch is off, the indicator light is in circuit through the brake light switch of the automobile so as to indicate when that switch is closed."

Plaintiff's contention that the merchandise was "more than" a switch was predicated upon the indicator light. The trial court rejected the plaintiff's "more than" argument, stating (64 Cust.Ct. 323, 330, C.D. 3998 (1970)):

"It is apparent from the record that [the merchandise] was designed to

function primarily as a switch. Indeed [it] is even described as a "Flasher switch" on the installation and operation instruction card which accompanied it * * *. The fact that [it] monitors the brake light switch and has other features and functions is, in the court's opinion, merely incidental to the primary function of the electrical switch. It is, therefore, not more than a switch. * * *"

In reversing the trial court's judgment, the appellate court commented (449 F.2d at p. 1397, 59 CCPA at p. 18):

"We disagree with the court that the function of the indicator light, in particular the function of monitoring the operation of the brake light switch, is merely incidental to the switching function of the merchandise. *The indicating light structure and its circuitry take no part in the switching function. These elements were specifically designed to add additional functions to the merchandise which are significantly different from the switching function. Thus, the merchandise is more than an apparatus for making or breaking electrical circuits.*" [Emphasis added.]

In my view, the article in the present case is quite analogous to the article in the prior *Fedtro* case. To paraphrase a portion of the appellate court's decision quoted above: "The [testing] light structure and its circuitry take no part in the [rectifying] function. These elements were specifically designed to add [an] additional function to the merchandise which is significantly different from the [rectifying] function. Thus, the merchandise is more than [a rectifying apparatus]".

█ Significantly too, the appellate court held that the merchandise in the prior *Fedtro* case was more than a switch, notwithstanding the fact that the article was described on the instruction card which accompanied it as a "Flasher switch". Consequently, the fact in the instant case that the imported merchandise is denominated on its face as a "deluxe battery charger" does not *ipso facto* preclude plaintiff's contention that the article is more than rectifying apparatus.

In Castelazo & Associates, Famous Jobbing Co., Inc. v. United States, C.D. 3639, 294 F.Supp. 81, 61 Cust.Ct. 391 (1968), merchandise described as "folding shovel with pickel [pick]", so designed that it was capable of performing the functions of both a shovel and a pick, but not simultaneously, was held to be a multifunction article and therefore not classifiable under a designation (shovel) embracing only one of its two functions. The court posed the issue as follows (294 F.Supp. p. 83, 61 Cust.Ct. p. 394):

"The question is whether such an article, adapted to distinct uses *depending upon which portion of it is activated,* is properly described by the name applicable to one of its functions. Thus posed it would appear that the weight of authority demands a negative response. [Cases cited.]" [Emphasis added.]

While the pick shovel in *Castelazo* is obviously unlike the merchandise in the present case, nonetheless there are several points of analogy: 1) The pick shovel performs interrelated but separate and distinct functions. Thus, the pick loosens the dirt so that it can be shoveled more easily. Similarly here, the battery charger and tester perform complementary and interrelated but separate functions "depending upon which portion of it is activated". 2) The shovel and pick cannot be used simultaneously; neither can the battery charger and tester be used simultaneously. 3) The pick shovel is a unitary article dependent upon a common wooden handle. Similarly, the battery charger and tester comprise a unitary article by virtue of a common housing.

In *Dollar Trading Corp., supra,* the appellate court affirmed the decision of the trial court holding that drills and

rasps or files were more than rotary files or rasps, and therefore not subject to classification under an *eo nomine* designation providing for only one of their functions.

See also: United States v. Howard Hartry, Inc., C.A.D. 1099, 477 F.2d 1400, 60 CCPA 140 (1973) (engines with transmissions more than engines); United States v. New York Merchandise Co., 435 F.2d 1315, 58 CCPA 53, C.A.D. 1004 (1970) (poodle dog radios more than stuffed toy figures of animate objects); Garrard Sales Corp. v. United States, 35 CCPA 39, C.A.D. 369 (1947) (phonograph and radio when combined in a single unit constitute a separate and distinct article which is something more than either).

By contrast, in Astra Trading Corp. v. United States, 56 Cust.Ct. 555, C.D. 2703 (1966), the court held that a screwdriver with a flashlight component for illumination was not more than a screwdriver due to the presence of the illuminating feature. Nevertheless, the rationale in *Astra* supports the holding here. Thus, respecting the "more than" issue, the court noted (p. 561):

The decision in United States v. A. W. Fenton Company, Inc., 49 CCPA 45, C.A.D. 794, cited by plaintiff, is distinguishable. In that case, the imported article contained a motor which also embodied gears and a frame which served as a housing for other parts of the floor polisher. The additional features made the article more than a special type of a motor since it formed part of the assembly of the floor polisher. *The rationale of the A. W. Fenton decision, supra, would be applicable herein if the record showed that the article had a use in addition to its use as a screwdriver.* However, plaintiff's own witness, when questioned as to the purpose of the importation, stated, without qualification, that the article was "designed specifically to be used as an illuminated screwdriver," and "the purpose of this entire item is to be used as a screwdriver * * *."

* * * We do not believe that the additional feature of illumination transforms the basic purpose of the imported article from use as a screwdriver into some other use; *nor do we believe that the illuminating feature gives the article a use in addition to its intended use as a screwdriver.* For, illumination notwithstanding, the article remains essentially a device restricted to the use of turning screws, i. e., a screwdriver. * * * [Emphasis added.]

Significantly, the illuminated screwdriver in *Astra* performed a *single function* (turning screws), while here the CH–ACD battery chargers perform a *dual function* (testing *and* charging batteries). Stated differently, this imported merchandise has a use *in addition* to its use as a battery charger.

■ In summary, I am clear that no triable issue exists as to any material fact, and only a question of law is presented for determination.

To reiterate, according to the operating instructions, 1.5 volt batteries should *first* be tested to determine whether or not they are rechargeable, which prevents one from attempting to recharge "dead" or fully charged batteries. This procedure points up that there are circumstances when the testing feature would be utilized, but the charging feature would not be utilized. Additionally, the testing feature indicates whether a battery requires merely a "booster" charge or a full charge, and such feature reveals whether the recharge was effective. Thus, it is evident, that the tester and charger complement each other. Plainly, then, the testing element of the CH–ACD battery charger (which does not convert a. c. to d. c.) is indeed a highly significant feature of the article and, following the rationale of our appellate court in *Fedtro, supra,* makes the article something more than "rectifying apparatus". The cases relied upon by the Government, cited *supra,* have been carefully considered, but as I do not view the testing feature as merely incidental or auxiliary, those cases are not

deemed controlling relative to the present merchandise. Since there is no dispute that the merchandise is electrical, it is properly dutiable under the provision in item 688.40, TSUS for electrical articles, not specially provided for, as claimed by plaintiff.

In accordance with the views expressed herein, it is hereby adjudged and ordered:

1. Plaintiff's motion for summary judgment is granted.

2. Defendant's cross-motion for summary judgment is denied.

3. The regional commissioner of customs at the port of New York is directed to reliquidate the entries covered by this action respecting the items identified on the invoices as "Model CH–ACD Multi Purpose Deluxe Battery Charger with Silicon Diode" at the rates of 8 or 6.5 per centum ad valorem, depending upon the date of entry, pursuant to item 688.40, TSUS, as modified by T.D. 68–9.