The ASHFLASH CORPORATION

v.

UNITED STATES.

C.D. 4643;  Court Nos. 69/43133, etc.

United States Customs Court.

March 30, 1976.

Joseph Winston, New York City, for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C. (John A. Gussow and Joseph R. Borich, New York City, trial attys.), for defendant.

NEWMAN, Judge:

The issue in these 36 protests, consolidated pursuant to defendant's motion, concerns the proper tariff classification of certain "blinker lanterns", which were imported from Hong Kong during the years 1967 through 1970 and entered at the ports of New York and Los Angeles.

The merchandise was assessed with duty at the rate of 13.75 per centum ad valorem under item 683.80 of the Tariff Schedules of the United States. Plaintiff claims that the imports are properly dutiable under item 688.40, TSUS, as modified by T.D. 68–9. The applicable rate of duty under item 688.-40 pursuant to T.D. 68–9 depends upon the year the merchandise was entered.[1]

I have concluded that the Government's classification was erroneous, and that the merchandise is properly dutiable under item 688.40, TSUS, as claimed by plaintiff.

## STATUTES INVOLVED

Classified under:

> Portable electric lamps with self-contained electrical source, and parts thereof:
>
>        *      *      *      *

683.80    Other ............. 13.75% ad val.

Claimed under:

688.40    Electrical articles, and electrical parts of articles, not specially provided for ... * * *

## THE RECORD

Each party called one witness: plaintiff's witness was Timothy A. O'Connell, its executive vice president; defendant's witness was Robert Brindley, market manager for the Battery Products Division of Union Carbide Corporation. Additionally, numerous exhibits (20 by plaintiff, 6 by defendant), including representative samples of the merchandise, were introduced in evidence.

The pertinent facts are:

The imports comprise various models of portable battery-operated "blinker" lanterns. The term "blinker" refers to the fact that in addition to a searchlight, which throws a constant light beam through a clear lens, the lanterns have an automatic signal-warning red flasher for use in emergency situations. Both the signal-warning flasher and searchlight portions utilize a common power source, viz., a dry cell battery or batteries.

The testimony, as well as an examination of the samples, reveals that the signal-warning flasher consists of a "blinking bulb",[2] socket, wiring, contacts, a red lens, or a translucent plastic collar which encloses the flasher in some of the models. Also, in eight of the imported models the signal-warning flasher includes a telescoping or a "swinging" (pivoting) arm. Some models have separate switches for the searchlight and the signal-warning flasher, while other models have a single multipositional switch designed to activate both the searchlight and signal-warning flasher. However, regardless of whether the particular model has a single multipositional switch or dual switches, the searchlight and signal-warning flasher may be used concurrently or independently.

It further appears that portable battery-operated lanterns are sold which function solely as searchlights and hence do not have a signal-warning flasher (viz., exhibit 2). Conversely, portable battery-operated signal-warning flashers are sold which serve no other function (viz., exhibit 20). Thus, the imports combine both the searchlight and signal-warning functions with a common source of power for both functions.

To summarize, I find that although utilizing a common power source, the searchlight and signal-warning flasher portions have separate bulbs, sockets, lenses, wiring, contacts, and in most of the models separate switches; that the imports serve two inde-

---

1. The rates of duty under item 688.40, TSUS, as modified by T.D. 68–9, for the years 1967, 1968, 1969 and 1970 were 11.5, 10, 9, and 8 per centum ad valorem respectively.

2. This bulb "is caused to blink by virtue of two dissimilar metal materials deflecting against one another" (R. 159–160).

pendent and coequal functions as a searchlight and as a signal-warning flasher; that the signal-warning function does not assist, improve or augment the searchlight function; and finally, that neither of the dual functions is incidental, auxiliary or subordinate to the other function.

## CONTENTIONS OF THE PARTIES

Defendant contends that item 683.80 is an *eo nomine* provision and that "the merchandise at bar is, in fact, a form of portable electric lamp includable in the *eo nomine* provision for such articles, and was properly classified under item 683.80 * * *". "In essence", defendant urges "the portable electric lamps, notwithstanding the blinking features, which are subordinate and incidental to the main function of providing illumination, are not 'more than' portable electrical lamps". 

Plaintiff, on the other hand, insists that each of the imports is a combination illuminating and signalling device, and that neither of those dual functions is subordinate to the other. Consequently, argues plaintiff, the signal-warning flasher makes the imports "more than" the portable electric lamps covered by item 683.80.

## ISSUE PRESENTED

The legal issue is whether the "blinking" lanterns are a form of portable electric lamp within the *eo nomine* provision therefor in item 683.80, TSUS, as contended by defendant, or whether the signal-warning flasher makes the imports "more than" such portable lamps, as urged by plaintiff.

## DECISION

It is well settled that where merchandise has a single primary function and an incidental, subordinate, or secondary function, it is classifiable on the basis of its primary design, construction, and function. *Trans-Atlantic Company v. United States,* 471 F.2d 1397, 60 CCPA 100, C.A.D. 1088 (1973); *Great Western Sugar Co. et al. v. United States,* 452 F.2d 1394, 59 CCPA 56, C.A.D. 1038 (1972); *Arthur J. Fritz & Co. et al. v. United States,* 452 F.2d 1399, 59 CCPA 46, C.A.D. 1036 (1971); *United Carr Fastener Corporation v. United States (Northern Screw Corp., Party in Interest),* 54 CCPA 89, C.A.D. 913 (1967).

Further, a long line of authorities holds that merchandise which constitutes more than a particular article or which has additional nonsubordinate or coequal functions is not classifiable as that article. *Dollar Trading Corp. v. United States,* 468 F.2d 631, 60 CCPA 10, C.A.D. 1074 (1972); *United States v. Flex Track Equipment Ltd. et al.,* 458 F.2d 148, 59 CCPA 97, C.A.D. 1046 (1972); *E. Green & Son (New York), Inc. v. United States,* 450 F.2d 1396, 59 CCPA 31, C.A.D. 1032 (1971); *Servo-Tek Products Co., Inc. v. United States,* 416 F.2d 1398, 57 CCPA 13, C.A.D. 969 (1969); *Cragstan Corporation v. United States,* 51 CCPA 27, C.A.D. 832 (1963); *United States v. The A. W. Fenton Company, Inc.,* 49 CCPA 45, C.A.D. 794 (1962); *United States v. Milton Diamond and Massce-Barnett Co., Inc.,* 42 CCPA 9, C.A.D. 561 (1954); *Geo. S. Bush & Co., Inc. v. United States,* 38 CCPA 30, C.A.D. 435 (1950); *United States v. Sutherland International Despatch et al.,* 21 CCPA 264, T.D. 46790 (1933); Sturm, *A manual of Customs Law* (1974), pp. 298–300. Hence, it follows that combination articles having coequal functions may not be classified under a tariff description applicable only to one of the functions. As the rule was aptly put by Judge Re in *Oxford International Corp. v. United States,* 70 Cust.Ct. 217, 221, C.D. 4433 (1973):

It is settled that a combination or multifunction article is not classifiable for tariff purposes under a specific statutory provision describing only one of those features or functions as the importation is more than the article described therein.
* * *

In *Oxford,* certain "horn-lights" classified as parts of bicycles under item 732.36, TSUS, were claimed properly dutiable under the provision in item 685.70, TSUS, for electrical "sound or visual signalling apparatus". Judge Re found that while the horn portion of the combination articles was

an electrical sound signalling device, the light portion did more than merely serve as a signal in that it primarily functioned as an illuminating device. Consequently, the court determined "that the horn-lights possess an important illuminating feature at least coequal to their signalling function, thus making them more than signalling apparatus". (70 Cust.Ct. at p. 224.)

Here, the primary function of the signal-warning flasher is plainly that of signalling rather than illumination. The signal-warning flasher, then, is essentially an electrical visual signalling apparatus of the type covered by item 685.70. While in *Oxford,* it was the light (illuminating) portion of the hornlight combination articles that made them more than sound and visual signalling apparatus under item 685.70, here it is the signal-warning flasher (a signalling device) which constitutes the "blinker" lanterns more than the portable lamps covered by item 683.80. Thus, notwithstanding the factual difference between *Oxford* and the present case, the "more than" rationale applied by the court in *Oxford* is fully applicable here.

■ In sum, while the searchlight portion of the imports concededly falls within the purview of item 683.80, the signal-warning flasher portion performs a visual signalling function which is separately covered by item 685.70. The separate tariff provision for electrical visual signalling apparatus in item 685.70 is a clear indication of a Congressional intent to exclude battery-operated blinking lights used for signalling from item 683.80. Accordingly, the judicial precedents applying the "more than" doctrine to combination articles having coequal functions covered by different tariff provisions are obviously controlling in the present case.

As previously mentioned herein, the components comprising the signal-warning flasher in the "blinker" lanterns, i. e., the bulb, socket, wiring, contacts, lens, and in some of the models a swinging or telescop-

ing arm, are independent of and take no part in the operation of the searchlight function.[3] Moreover, as we have noted, the two functions utilize separate switches or a selectively operative multipositional switch. This factual setting is analogous to those in *Fedtro, Inc. v. United States,* 449 F.2d 1395, 59 CCPA 16, C.A.D. 1028 (1971), and in *Fedtro, Inc. v. United States,* 376 F.Supp. 1398, 72 Cust.Ct. 267, C.D. 4548 (1974).

In the first cited *Fedtro* case, merchandise invoiced as "4-way Flasher Switches for Automobiles" was classified by the Government under the provision for switches in item 685.90, TSUS. The importer claimed that the merchandise was more than a switch and properly dutiable as visual signalling apparatus under item 685.70, TSUS. The article in issue was described by the appellate court as follows (449 F.2d at p. 1396, 59 CCPA at p. 18):

The imported article is used to connect the front and back signal lamps of an automobile with the flasher circuit for the directional signals, in such a manner that all four lamps flash simultaneously. The article includes a switch which is selectively operative to provide the 4-way flashing action, an indicator light, a capacitor connected across the switch terminal, and a fuse in series circuit with the switch. These elements are disposed in a housing which is adapted for mounting on the dashboard. The indicator light is made up of a red jeweled lens on the housing cooperating with a lamp bulb in a socket disposed within the housing. The socket of the indicator light is so wired that, when the 4-way switch is on, the light flashes simultaneously with the front and back signal lamps. When the 4-way switch is off, the indicator light is in circuit through the brake light switch of the automobile so as to indicate when that switch is closed.

Plaintiff's contention that the merchandise was "more than" a switch was predicated upon the indicator light. The trial

---

3. It is, however, noted that the searchlight and signal-warning flasher in most of the models share a common "base plate" adapted to holding a battery by screws or a housing for holding the battery or batteries.

court rejected the plaintiff's "more than" argument, stating (64 Cust.Ct. 323, 330, C.D. 3998 (1970)):

It is apparent from the record that [the merchandise] was designed to function primarily as a switch. Indeed [it] is even described as a "Flasher switch" on the installation and operation instruction card which accompanied it * * *. The fact that [it] monitors the brake light switch and has other features and functions is, in the court's opinion, merely incidental, to the primary function of the electrical switch. It is, therefore, not more than a switch. * * *

In reversing the trial court's judgment, the appellate court commented (449 F.2d at p. 1397, 59 CCPA at p. 18):

We disagree with the court that the function of the indicator light, in particular the function of monitoring the operation of the brake light switch, is merely incidental to the switching function of the merchandise. *The indicating light structure and its circuitry take no part in the switching function. These elements were specifically designed to add additional functions to the merchandise which are significantly different from the switching function. Thus, the merchandise is more than an apparatus for making or breaking electrical circuits.* [Emphasis added.]

In the second *Fedtro* case, articles comprising a combination battery charger and battery tester for small dry cell batteries were classified by the Government as "rectifying apparatus" pursuant to item 682.60, TSUS. The Government contended that the merchandise was primarily a rectifying apparatus (a battery charger), and that the testing feature (a light bulb with its related circuitry), which performed no rectifying function, was an incidental or auxiliary feature. The importer argued that the dual function articles were "more than" rectifying apparatus, and that they were properly dutiable under item 688.40, TSUS.

In *Fedtro*, this court found that there were circumstances where the testing feature would be utilized but the charging feature would not be utilized. Moreover, paraphrasing a portion of the appellate court's opinion in the *Fedtro* case involving the automobile flasher switches (449 F.2d 1395, 1397, 59 CCPA at p. 18), this court determined that: "The [testing] light structure and its circuitry take no part in the [rectifying] function. These elements were specifically designed to add [an] additional function to the merchandise which is significantly different from the [rectifying] function. Thus, the merchandise is more than [a rectifying apparatus]".

The facts in the present case are analogous to those in the two *Fedtro* cases discussed *supra*. There are obviously emergency situations in which the signal-warning portion of the imports would be useful, irrespective of whether the searchlight portion was used. Again, it is emphasized that the signal-warning bulb, socket, lens, wiring, contacts, switches and other elements take no part in the searchlight function of the lanterns. The signal-warning apparatus clearly adds an additional feature to the merchandise, which is significantly different from the searchlight function. Thus, following the rationale of the two *Fedtro* cases, these imports are more than portable electric lamps, as provided for in item 683.-80.

And see also the decision in *Pollard Bearings Corporation v. United States,* 511 F.2d 568, 62 CCPA 60, C.A.D. 1146 (1975), wherein the appellate court recently reiterated the principle that merchandise which in fact constitutes more than a particular article is not classifiable as that article. In *Pollard,* the court held that certain bearings were more than parts for water pumps since the bearings also served an additional important function in rotating the automobile's fan. The appellate court held that "the weight of the evidence clearly establishes that the imported bearings do not have one primary use or function, but rather have a dual primary function—supporting and rotating both the fan and water impeller—which renders the imported bearings 'more than' parts for water pumps [footnote reference omitted]". Similarly, in the present

case, it is clear from the exhibits and testimony that the blinker lanterns "do not have one primary use or function, but rather have a dual primary function"—searchlight and signal-warning flasher.

Defendant principally relies upon *Continental Exchange, Ltd. v. United States,* 281 F.Supp. 892, 60 Cust.Ct. 233, C.D. 3333 (1968) as dispositive of the issue in the present case. In *Continental,* the merchandise comprised a small rechargeable flashlight with a red blinking light. The articles were classified under item 683.70 as "Portable electric lamps with self-contained electrical source, and parts thereof: Flashlights and parts thereof". Plaintiff claimed that the merchandise was more than a flashlight and properly dutiable under either item 685.70 or 683.80. On cross-examination, the plaintiff's witness admitted that the article had imprinted on it "Rechargeable Flashlight", and that it was narrower and longer than a package of cigarettes, could be carried in one's pocket or purse, and could be used to find a keyhole in a door at night, or searching for something in a purse. In sustaining the classification under item 683.70, the court held, *inter alia,* that the articles were primarily flashlights, finding no convincing evidence that the blinking red light was used or effective as a signalling light; and that since flashlights are not "lamps" within the common meaning of the term, they were not properly classifiable under item 683.80 as "Portable electric lamps with self-contained electrical source, and parts thereof: Other".

■ In the present case, however, observation and operation of the samples themselves, including turning on the signal-warning flasher of a representative sample (exhibit 6) outdoors at night, demonstrate to my satisfaction the potential usefulness of the "blinker" lanterns to motorists and others as a signal-warning apparatus in emergency situations. In this respect, expert testimony is not required, and I find the probative effect of the samples sufficient here.

It is, of course, fundamental that samples are potent witnesses and may have great probative effect—"a principle long acknowledged by this court and the Court of Customs and Patent Appeals" (see *Oxford, supra,* 70 Cust.Ct. at p. 223, and appellate court authorities cited).

■ Moreover, this court may take judicial notice that blinker lanterns, such as those before the court, are widely promoted and sold in automotive, camping and other retail outlets as devices which may be used for their signal-warning function as well as their illuminating function. It is common knowledge that in emergency situations on the highway the signal-warning flasher component of the blinker lanterns is frequently used by motorists. Under all of the facts and circumstances, I find uncreditable the testimony of defendant's witness that the signal-flasher component would be "next to useless" to a motorist at night for emergencies on the road (R. 201–202).

In short, the blinker lanterns in the present case are of a substantially different size and design than the small purse size flashlights in *Continental,* and the signal-warning flasher is a significant feature of the instant imports. Therefore, I have concluded that the *Continental* holding is not dispositive in the present case.

Defendant also asserts that *Astra Trading Corp. v. United States,* 56 Cust.Ct. 555, C.D. 2703 (1966), supports its position. There, the court held that a screwdriver with a flashlight component for illumination was not more than a screwdriver due to the presence of the illuminating feature. Respecting the "more than" issue, the court commented (56 Cust.Ct. at p. 561):

The decision in *United States v. A. W. Fenton Company, Inc.,* 49 CCPA 45, C.A.D. 794, cited by plaintiff, is distinguishable. In that case, the imported article contained a motor which also embodied gears and a frame which served as a housing for other parts of the floor polisher. The additional features made the article more than a special type of a motor since it formed part of the assembly of the floor polisher. *The rationale of the A. W. Fenton decision, supra, would be applicable herein if the record showed*

*that the article had a use in addition to its use as a screwdriver.* However, plaintiff's own witness, when questioned as to the purpose of the importation, stated, without qualification, that the article was "designed specifically to be used as an illuminated screwdriver," and "the purpose of this entire item is to be used as a screwdriver * * *."

* * * We do not believe that the additional feature of illumination transforms the basic purpose of the imported article from use as a screwdriver into some other use; *nor do we believe that the illuminating feature gives the article a use in addition to its intended use as a screwdriver.* For, illumination notwithstanding, the article remains essentially a device restricted to the use of turning screws, i. e., a screwdriver. * * * [Emphasis added.]

Significantly, the illuminated screwdriver in *Astra* was designed to perform a single function—turning screws—and the illuminating feature merely assisted or facilitated the screw turning function.

Parenthetically, in the recent decision, *United States v. Oxford International Corp.,* 517 F.2d 1374, 62 CCPA 101, C.A.D. 1154 (1975), our appellate court similarly held that a rearview bicycle mirror was not more than a mirror with frames or cases within the purview of item 544.51 by virtue of its mounting bracket, since the bracket merely facilitated the use of the article as a mirror. In alluding to the many cases wherein the "more than" doctrine was applied, the appellate court observed that "in each [case] there was a *second significant function* in the importation justifying the application of the 'more than' doctrine." (Emphasis added.)

Here, the signal-warning flasher is "a second significant function in the importation justifying the application of the 'more than' doctrine". Unlike the illuminated screwdrivers in *Astra* and the bicycle mirrors in *Oxford,* the blinker lanterns perform dual and independent functions, neither of which assists or facilitates the other. Hence, while the facts in the present case

are readily distinguishable from those in *Astra* and *Oxford,* the *rationale* of those cases supports the conclusion reached herein.

*Remington Rand Div. of Sperry Rand Corp. v. United States,* 51 CCPA 57, C.A.D. 837 (1964), relied upon by defendant, is also distinguishable from the present case. There, the question was whether the rechargeable feature of certain flashlights made the articles more than flashlights for purposes of classification under paragraph 353 of the Tariff Act of 1930. In rejecting plaintiff's "more than" contention, the appellate court held that rechargeable flashlights fall within the definition of "flashlight", and distinguished *United States v. Sydney Kann & Co.,* 20 CCPA 77, T.D. 45702 (1932), as follows (51 CCPA at p. 60):

* * * Thus, in *United States v. Sydney Kann & Co.,* 20 CCPA 77, T.D. 45702, this court held that a mechanical pencil having in its top portion a cigar or cigarette lighter was not a pencil. The court found that it was a "combination article," which seems to indicate that the item was something more than either a mere pencil or a mere lighter. At any rate, in our opinion the instant case and *Sydney Kann* are readily distinguishable. *A pencil and a cigarette lighter independently perform wholly different functions, and the combination of the two in no way affects the functioning of either of them.* On the other hand, a recharging network in a flashlight equipped with rechargeable batteries is, in a very real sense, integrated with the flashlight, and thus is as much a part of the flashlight as are the lens, bulb and other components referred to in the *Tower* case. The unit as a whole is imported, sold and used as nothing more than a particular kind of flashlight. Cf. *Biddle Purchasing Co. v. United States,* 50 CCPA 71, C.A.D. 823. [Emphasis added.]

Since in the instant case, the searchlight and the signal-warning flasher components of the blinker lanterns "independently perform wholly different functions, and the combination of the two in no way affects

the functioning of either of them", the blinker lanterns are analogous to the combination pencil and cigarette lighters in *Kann,* but are not analogous to the rechargeable flashlights in *Remington Rand,* the latter performing solely the function of a flashlight. It is an undisputed fact that basic portable lanterns, such as plaintiff's exhibit 2 and defendant's exhibit E1, do not include any emergency signal-warning component. Plainly, then, the addition of the signal-warning flasher function, which function is not essential to a basic portable electric lamp, makes the merchandise "more than" the articles covered by item 683.80.

Additionally, defendant's effort to obfuscate the distinction urged by plaintiff between the "illumination" and signal-warning flasher functions of the blinker lanterns is not supported by the testimony of defendant's expert, Brindley, who stated on cross-examination (R. 179):

> Q. Now will you tell this court, please, with respect to function, how many functions does that article [exhibit 1] have?—A. Two, sir.
>
> Q. Would you tell the court what these functions are?—A. Illuminating and flashing.
>
> Q. Are they separate functions?—A. Insofar as they have separate switches and they are powered by separate bulbs, yes.

And at R. 181:

> Q. Now, sir, will you tell this court, from the functional point of view, how many functions are there to that item [exhibit 19]?—A. Two.
>
> Q. Will you tell the court what the two functions are?—A. Illuminating and blinking.

And at R. 185:

> Q. Now how many functions does that item [exhibit 18] perform?—A. Well, it has a four-position switch, if you want to include "off". It has an illuminating switch, a switch which allows both the blinking function and the illuminating function to occur simultaneously, and it has a switch to allow *the separate blinking function.* [Emphasis added.]
>
> Q. Does the blinker function depend upon the lantern function, sir?—A. Well, the way the switch is designed, you have to go through the lantern function before you get to the blinker function.
>
> Q. Would you look at it and answer the question if you would?—A. I would say in all honesty these are quite independent.

Finally, differentiating between a "design standpoint" and a "functional standpoint", defendant's witness opined that "[f]rom a design standpoint, the blinker is *definitely* more important", while from a functional standpoint he *"believed"* that the illuminating section is more important (R. 201).

I have carefully considered the testimony of the witnesses, the numerous exhibits, and the prior holdings of this court and our appellate court concerning the "more than" doctrine. Predicated upon all of the foregoing considerations, I am clear that the "blinking" lanterns with a signal-warning flasher are "more than" the portable electric lamps provided for in item 683.80, as contended by plaintiff. Consequently, I find no merit in defendant's argument that the imports are nothing more than a "form" of portable electric lamp within the purview of the *eo nomine* provision therefor in item 683.80. Since the imports are electrical articles not specially provided for, they are properly dutiable under item 688.40. The protests are sustained, and judgment will be entered accordingly.