**ASEA, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 80-4-00585.**

United States Court of
International Trade.

March 29, 1984.

Freeman, Wasserman & Schneider, New York City (Bernard J. Babb and Philip Yale Simons, New York City, of counsel), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, New York City, Atty. in Charge, International Trade Field Office, Commercial Litigation Branch; Barbara M. Epstein, Wantagh, N.Y., for defendant.

BERNARD NEWMAN, Senior Judge:

### Introduction

Plaintiff challenges the classification by the Customs Service of four shunt reactors imported from Sweden in 1978.

The District Director at the port of Duluth, Minnesota classified the imports under the provision for "inductors" in item 682.60 of the Tariff Schedules of the United States (TSUS) and assessed duty at the rate of 7.5 per centum ad valorem. ASEA, Inc. (the importer) claims that the shunt reactors are "more than" inductors and are properly dutiable under the provision in item 688.40, TSUS for "[e]lectrical articles, and the electrical parts of articles, not specially provided for" at the rate of 5.5 per centum ad valorem.

### Factual Background

The imports are large reactors intended for connection "in shunt" to high voltage electrical transmission lines for the purpose of drawing inductive current to compensate for the capacitive current from the transmission line. The term "in shunt" refers to the method of installing the reactors parallel to the electrical system; the terms "reactor" and "inductor" are "used synonomously" (R. 102).

Within each of the shunt reactors are four bushing current transformers which "step down" (reduce) the current for the "protection" (Tr. 56–57, 116–17, 170, 208, 213), "safety" (Tr. 97, 191) and "monitoring" of the reactors (Tr. 56–57, 134, 191) "to ensure that the current is within the limits that you would expect it to be" (Tr. 57). The "bushing" component of the imports is the primary winding passing through the center of the current trans-

former core, and the secondary windings of the current transformers are around a donut-shaped iron core which is placed around the bushing of the reactor element (Tr. 34–35). The bushing current transformers do not perform an inductive function, but operate concurrently with the operation of the reactors (Tr. 172). Hence, the current transformers perform no function prior to the operation of the reactors or after the reactors have been disconnected (Tr. 72, 133). Shunt reactors "customarily" utilize bushing current transformers (Tr. 133–34).

The electric power industry recognizes shunt reactors with bushing current transformers as "inductors" (Tr. 63–64, 124, 176, 190–91, 193, 206), and the bushing current transformers are "auxiliary devices" (Tr. 174, 213) or "an accessory" (Tr. 208, 211–12) to the reactors' primary function of inductance (Tr. 124, 169, 172–73, 190, 207, 212). The shunt reactors contain a number of other auxiliary components: a hot oil thermometer for measuring the temperature of the oil to determine whether it is overheating; an oil level gauge to indicate the level of oil in the tank; a sudden pressure valve for the release of excessive gas pressure produced by an electrical fault; an expansion tank and piping; a Buckholtz relay to indicate whether a high level of gas is produced by an electrical fault; lifting lugs for raising the reactors during installation; etc.

## Opinion

Plaintiff contends that the common meaning of the term "inductor" is limited to devices comprised of a coil of wire around a core, used to provide inductive reactance in an electrical circuit. Further, plaintiff posits that the shunt reactors in issue are "combination articles" comprising two "separate, nonsubordinate and coequal" components: (1) an inductor; and (2) the bushing current transformers. Therefore, according to plaintiff, the shunt reactors are "more than" inductors or transformers, and consequently, are properly dutiable under the "basket" provision for electrical articles in item 688.40, TSUS.

Defendant, however, insists that the instant reactors fall within the common meaning of the term "inductor" since the bushing current transformers are auxiliary or incidental to the primary inductive function of the reactors. Accordingly, argues defendant, the "more than" doctrine is inapplicable to the facts in this case, and the shunt reactors were properly classified by Customs under item 682.60, TSUS.

The legal principles applicable to the facts in the present case were summarized by this Court in *The Ashflash Corporation v. United States*, 76 Cust.Ct. 112, 115–16, C.D. 4643, 412 F.Supp. 585, 587 (1976):

It is well settled that where merchandise has a single primary function and an incidental, subordinate, or secondary function, it is classifiable on the basis of its primary design, construction, and function. [Citations omitted.]

Further, a long line of authorities holds that merchandise which constitutes more than a particular article or which has additional nonsubordinate or coequal functions is not classifiable as that article. [Citations omitted.]

More recently, concerning the classification of combination or multifunction articles, Judge Maletz commented in *Tridon, Inc. v. United States*, 5 CIT ——, Slip Op. 83–36 (1983):

It is true that a combination or multifunction article cannot be classified under a provision which describes only one of the article's multiple functions, inasmuch as it is "more than" the article so described. Stated somewhat differently, an article having two functions which are co-equal cannot be classified according to either function. At the same time, however, it is the primary function of the item which governs its classification. Thus, where an item has both a primary and an incidental, subordinate or secondary function, it will be classified on the basis of the former. The question whether a given function is secondary or co-equal is one of fact. "To say that an article is 'more than' that described by a particular tariff provision is to say little

more than that, in the opinion of the Court, the provision cannot be interpreted to cover it." [Citations omitted.]

As was aptly observed in *Tridon, Inc.*, "[t]he question of whether a given function is secondary or coequal is one of fact". Here, the record clearly establishes that the function of an inductor is to introduce inductance into a circuit, which is the primary, if not the sole, function of the shunt reactors. *Cf. Knowles Electronics, J.E. Bernard & Co., Inc. v. United States*, 71 Cust.Ct. 112, C.D. 4483, 371 F.Supp. 1393, (1973), *aff'd*, 62 CCPA 1, C.A.D. 1134, 504 F.2d 1403, (1974). Moreover, plaintiff's witnesses readily conceded and the Government's witnesses unequivocally testified, that the instant reactors are recognized as inductors in the electric power industry. Indeed, in the industry the terms "reactor" and "inductor" are used synonomously. It is basic, of course, that tariff terms presumably carry the meaning given them in trade and commerce. *Ameliotex, Inc. v. United States*, 65 CCPA 22, C.A.D. 1200, 565 F.2d 674 (1977) and *Esco Manufacturing Co., aka J. Hofert Co. v. United States*, 63 CCPA 71, C.A.D. 1167, 530 F.2d 949 (1976).

While the record shows that the shunt reactors function primarily as inductors,[1] they normally contain bushing current transformers which serve to "step down" the current in the shunt reactors for the purpose of monitoring the current to protect the reactors. However, there is no credible evidence in the record to support plaintiff's contention that this "step down" function of the current transformers is coequal or nonsubordinate to the inductive function of the reactors. Rather, the record conclusively establishes that the function of the bushing current transformers is auxiliary or incidental to the function of the reactors as inductors, and that plaintiff's "more than" argument greatly exaggerates the significance of the "step down" function of the bushing current transformers. Interestingly, plaintiff's marketing brochures for the subject merchandise (defendant's exhibits B, C and D) do not even mention the bushing current transformers (Tr. 90), nor in any manner do the brochures suggest that the imports are combination inductor-transformers. This silence in the brochures speaks louder than plaintiff's "coequal" contention in its brief.

The short of the matter is that the primary function of the shunt reactors is their inductive function, and the bushing current transformers do not give the reactors a second significant function. Consequently, the cases cited by plaintiff wherein the Courts applied the "more than" doctrine to combination articles having a second significant or two coequal functions are readily distinguishable from the facts in the present case. *See e.g. United States v. Howard Hartry, Inc.*, 60 CCPA 140, C.A.D. 1099, 477 F.2d 1400 (1973) (engines with transmissions); *United States v. Acec Electric Corporation*, 60 CCPA 113, C.A.D. 1091, 474 F.2d 1009 (1973) (clutch-motors used on sewing machines); *All Channel Products Corp. v. United States*, 1 CIT 128 (1981) (switches with attached wires); *Harper-Wyman Company v. United States*, 1 CIT 108 (1981) (switch-thermostats used in ovens); *Ashflash Corp. v. United States, supra* (combination searchlight and signal-warning flashers); *Fedtro, Inc. v. United States*, 72 Cust.Ct. 267, C.D. 4548, 376 F.Supp. 1398 (1974) (battery chargers with tester bulb) and *Ideal Toy*

---

1. The American National Standards Institute, Inc. publication ANSI/IEEE C57.21-1981 covering IEEE (Institute of Electrical and Electronics Engineers) standard requirements, terminology and test code for shunt reactors over 500 kVA sets forth the following definitions:

2.1 Shunt Reactor

2.1.1 Reactor. A device used for introducing impedance into an electric circuit, the principal element of which is inductive reactance.

2.1.2 Shunt Reactor. A reactor intended for connection in shunt to an electric system for the purpose of drawing inductive current. NOTE: The normal use for shunt reactors is to compensate for capacitive currents from transmission lines, cable, or shunt capacitors. The need for shunt reactors is most apparent at light load.

*Corporation v. United States,* 66 Cust.Ct. 289, C.D. 4206 (1971) (motors with bent shaft).

The controlling principle under all the facts and circumstances of this case has been applied in numerous previous decisions involving merchandise with multiple features or functions wherein the Court held that the primary feature or function governed the classification of the merchandise. *See e.g. United States v. Oxford International Corp.,* 62 CCPA 102, C.A.D. 1154, 517 F.2d 1374 (1975) (mirrors with mounting bracket); *Trans-Atlantic Company v. United States,* 60 CCPA 100, C.A.D. 1088, 471 F.2d 1397 (1973) (spring hinges); *Tridon, Inc. v. United States, supra* (motor vehicle signal flashers with audible clicking sound); *Craig Corporation v. United States,* 75 Cust.Ct. 162, C.D. 4623 (1975) (microphones with on-off switch); *Craig Corporation v. United States,* 75 Cust.Ct. 161, C.D. 4622 (1975) (footswitches for tape recorders). *See also* 2 Sturm, *Customs Law & Administration* § 54.12, at 63 (3d ed. 1983), and cases cited.

Predicated upon the primary function of the shunt reactors as inductors, the clearly established subordinate character of the bushing current transformers, and on consideration of the authorities cited by the parties, the Court concludes that Customs properly classified the merchandise under item 682.60, TSUS.

For the foregoing reasons, judgment will be entered for defendant dismissing this action.