57 CCPA

Herbert G. **SCHWARZ**, dba **Ski Imports**, Appellant,

v.

The **UNITED STATES**, Appellee.

**Customs Appeal No. 5326.**

United States Court of Customs and Patent Appeals.

Nov. 20, 1969.

Stein & Shostak, Los Angeles, Cal., attorneys of record, for appellant; S. Richard Shostak, Los Angeles, Cal., of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, John A. Winters, Edwin L. Weisl, Jr., New York City, for the United States.

Before RICH, Acting Chief Judge, JONES, Judge, sitting by designation, ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

This is an appeal by Herbert G. Schwarz, dba Ski Imports, from the decision and judgment of the United States Customs Court, Second Division, Herbert G. Schwarz, d/b/a Ski Imports v. United States, 60 Customs Court 522, C.D. 3447, sustaining the District Director's classification of certain automobile luggage racks and ski carriers imported from Switzerland and West Germany. The items were assessed with duty at 19% ad valorem under item 657.-20 of the Tariff Schedules of the United States [TSUS],[1] under the provision for articles of iron or steel not coated or plated with precious metal, other. The importer claims that the merchandise should be properly classifiable as fittings and mountings designed for motor vehicles, dutiable at 8.5% ad valorem under item 647.01 of the Tariff Schedules.[2]

The protested merchandise was identified and described by appellant Herbert George Schwarz in his testimony at the trial. Mr. Schwarz testified that his firm has been importing these items for 10 to 15 years in quantities of 2,400 a year, that he sells them to dealers in all fifty states and especially Volkswagen Pacific in Los Angeles and a Division of Porsche Pacific in Los Angeles and Culver City. The merchandise is offered in the trade as ski carriers and luggage carriers and is considered by the witness to be fittings and mountings for automobiles.

Exhibit 1 is a combination ski and luggage rack used on Porsche model 356 automobiles and is covered by protest 67/19999 and is designated on the invoice as type L 303.

Exhibit 2 is a ski carrier designed for all models of Volkswagen automobiles. This merchandise is covered by protest 67/1787 and is designated on the invoices as W 4L.

Exhibit 3 is a ski carrier designed for carrying skis on any automobile that has a rain gutter. The merchandise is covered by protest 67/1787 and is designated on the invoice as SL.

Exhibit 4 is a ski carrier designed for Volkswagen automobiles. It is covered by protest 67/4416 and is designated on the invoice as number 4078.

Exhibit 5 consists of catalogue sheets from a brochure covering automotive products, issued October 1966 by Herbert G. Schwarz Imports, depicting Exhibits

---

1. [TSUS] Schedule 6, Part 3, Subpart G headnote:
   1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.
   * * * * *
   Articles of iron or steel, not coated or plated with precious metal:
   * * * * *
   Other articles:
   * * * * *
   657.20        Other ... 19% ad val.

2. Schedule 6, Part 3, TSUS, as amended by the Tariff Schedules Technical Amendments Act of 1965, Pub.L. No. 89-241, § 36(a), 79 Stat. 933 (1965):
   Hinges; and fittings and mountings not specially provided for, suitable for * * * vehicle coach work * * *:
   Not coated or plated with precious metal:
   Of iron or steel, of aluminum, or of zinc:
   Hinges, fittings, and mountings, designed for motor
   647.01  vehicles ............ 8.5% ad val.

1 through 4 as they appear when attached to an automobile.

Exhibits 1, 2, and 4 are designed for either the Volkswagen or the Porsche automobile and Exhibit 3 will fit any hardtop automobile with a rain gutter. Exhibit 1 is attached to the automobile by means of bolts which go through the holes at the base of the luggage carrier and into four threaded holes which have been provided on the automobile by the manufacture for installation of the luggage and ski carrier. The luggage and ski carrier can be left on the automobile or removed at the option of the consumer. Exhibit 2 is attached by two bolts on the top of the item and one bolt at the bottom. The same bolt holds the bumper to the vehicle. The installation is considered to be a simple operation.

The Plaintiff's second witness was George A. Holcomb, purchasing representative for Porsche Car Distributors, the distributor and importer of Porsche automobiles in California, southern Nevada, and Arizona. Mr. Holcomb has installed or supervised the installation of articles like Exhibits 1, 2, and 3, on many occasions. He stated that Exhibit 1 is attached to the engine compartment door of certain models of Porsche automobiles explaining that the manufacturer provides brackets in the engine door mountings to accept the bolts that come with the ski and luggage carrier. Exhibit 2 is attached to the Volkswagen grill where little nuts are provided on the bottom of the ski carrier to go through the slots in the grill and tighten down the bottom surface to the grill. Exhibit 3 is attached by assembling it, putting the feet on the rain gutter of the roof panel and tightening a hook that goes around underneath the rain gutter with a wing nut. Although the witness has never installed Exhibit 4, he thinks it would attach quite similarly to Exhibit 2.

The trial judge read from Webster's Seventh New Collegiate Dictionary the following definitions:

fitting: a small, often standardized, accessory part.

mounting: a frame or support; an undercarriage or part that fits a device or use, or attaches an accessory.

Both witnesses agreed that in their opinion the dictionary definitions conformed to the definition of fittings and mountings as known in the industry.

The question before the court now is whether these luggage racks and ski carriers are fittings or mountings within the meaning contemplated for those terms in item 647.01, supra.

The present item 647.01 did not appear in the Tariff Schedules of the United States, as originally enacted. Its predecessor, item 647.00, did, however, have the same superior heading.

That superior heading appears to have been derived, at least in part, from item 83.02 of the Nomenclature for the Classification of Goods in Customs Tariffs, generally known as the Brussels Nomenclature, which provides:

83.02 Base metal fittings and mountings of a kind suitable for furniture, doors, staircases, windows, blinds, coachwork, saddlery, trunks, caskets, and the like (including automatic door closers); base metal-hat-racks, hat-pegs, brackets and the like.

In the explanatory notes to the Brussels Nomenclature (vol. II, page 754), it is stated that the heading covers general purpose classes of base metal accessory fittings and mountings such as are used on furniture, doors, windows, and coachwork. Included are:

(D) Fittings for all types of vehicle coachwork (e. g. for rolling-stock, automobiles, trailers or horse carts), *not being parts or accessories falling within Section XVII.* For example:— made-up ornamental beading strips; foot rests; grip bars, rails and handles; fittings for blinds (rods, brackets, fastening fittings, spring mechanisms, etc.); luggage racks for interiors of railway compartments, road coaches, etc.; hood hinges; window opening mechanisms; ash trays

specialized for mounting in coachwork; tail-board fastening fittings; fittings for horsedrawn vehicles (e. g., whip sockets, lamp brackets and holders). (Emphasis added).

The Brussels Nomenclature provides for parts and accessories of motor vehicles in item 87.6, which, in explanatory notes thereunder, includes exterior luggage racks. Therefore, the Brussels Nomenclature indicates that luggage and ski racks are not covered by provisions for fittings and mountings suitable for coachwork.

The same conclusion may be drawn from the legislative history of item 647.-01. Item 647.01 was added by the Tariff Schedules Technical Amendments Act of 1965. When the bill (H.R. 7969) was before the House of Representatives, the Committee on Ways and Means issued a report [3] which states at p. 23:

It now appears in the light of more complete data available that certain of the estimated weighted average rates of duty in the TSUS [tariff schedules of the United States] should be changed:

(a) Hinges and fittings, etc.—Subsection (a) of section 30 repeals item 647.00 and in effect divides its former scope into two parts with new item 647.01, re-establishing the former rate of duty (8.5 percent ad valorem) imposed under paragraph 369(c) for hinges, fittings, and mountings, designed for motor vehicles. It was found that there is quite a substantial import trade in such articles. Included herein are such articles as special types of hinges for trunk lids, doors, windows, hoods, and glove compartments, convertible top supports, window regulator escutcheons, window channels, dashboard trim, and interior and exterior trim.

■ From this report it appears that it was the intention of the Committee not to enlarge or change the scope of former item 647.00 but to divide it into two sections with one section providing for a lower rate for such motor vehicle fittings and mountings as had been previously covered. The exemplary list of such fittings and mountings and the reference to paragraph 369(c) of the 1930 act, which specifically covered only "parts" of motor vehicle bodies, make it clear that the class of merchandise intended to be covered by the new item 647.01 encompasses only such articles as go into and become a *part* of a motor vehicle coach.

■ We feel that the ski and luggage carriers involved here may be fittings and mountings in the sense that they are accessories or supports but they are not *parts* of automobiles or automobile bodies as that term is construed in tariff statutes.

Auxiliary equipment contributing to the safe and efficient operation of the vehicle has been held a part of an automobile. Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849 (1964).

United States v. Antonio Pompeo, 43 CCPA 9, C.A.D. 602 (1955), held that superchargers were parts of automobiles, since although optional, when installed they become integral, constituent, and component parts without which the motors would not function.

The court in United States v. Cody Manufacturing Co., Inc., 44 CCPA 67, C.A.D. 639 (1957), discussing cases on "parts", quoted from Peter J. Schweitzer, Inc. v. United States, 16 Ct.Cust.App. 285, T.D. 42872 (1928), as follows:

* * * [W]hether an article is an accessory or an integral part of a machine depends, to a considerable extent, upon its use. If its use is casual, auxiliary, or optional, it is an accessory. If, however, it is used as an essential part, and if the machine is *incapable of performing its ordinary and proper functions without it,* it will be considered, at least for tariff purposes,

3. H.R.Rep.No.342, 89 Cong., 1st Sess. 23 (1965).

as an integral part of the machine. [Italics quoted.]

Applying the principles derived from these cases, we therefore feel that appellant's ski and luggage carriers are completely accessories. They have added nothing directly to the safety of the vehicle, nor do they become an integral component part thereof. To the contrary the ski and luggage carriers are easily removed from the vehicle without damage or impairment to the machine and the vehicle is capable of performing its ordinary function without them. The judgment of the Customs Court is affirmed.

Affirmed.