**KNOWLES ELECTRONICS, and J. E. Bernard & Co., Inc., Appellants,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 74–22.**

United States Court of Customs and Patent Appeals,

Nov. 7, 1974.

Barnes, Richardson & Colburn, New York City, attys. of record, for appel-

lants. Joseph Schwartz, New York City, and John W. Hupp, Chicago, Ill., of counsel.

Carla A. Hills, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, New York City, David A. Ast, Trial Atty., Customs Section, Civil Div., Dept. of Justice, New York City, for United States.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER Judges.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, 71 Cust.Ct. 112, C.D. 4483, 371 F.Supp. 1393 (1973), overruling in part appellants' consolidated protests against the classification of merchandise imported from England in 1966 and 1969. We affirm.

The merchandise consists of miniature electrical devices, invoiced as microphones, coils, and receivers, which the Government concedes were intended for assembly into hearing aids.[1] Appellants claim the goods are classifiable under item 709.50, TSUS, as parts of hearing aids. The microphones and receivers were classified by Customs under item 684.70, TSUS, as "microphones"; the coils were classified under item 682.60, TSUS, as "inductors."[2]

The relevant statutory provisions are:

*Schedule 6.—Metals and Metal Products*

Part 5.    Electrical Machinery and Equipment

\*    \*    \*    \*    \*    \*    \*    \*

*Part 5 headnotes*:

1. This part does not cover—

\*    \*    \*    \*    \*    \*    \*    \*

(vi) electrical instruments and apparatus \* \* \* provided for in schedule 7.

Generators, motors, motor-generators, converters (rotary or static), transformers, rectifiers and rectifying apparatus, and inductors; all the foregoing which are electrical goods, and parts thereof:

\*    \*    \*    \*    \*    \*    \*    \*

682.60    Other ................................... 12% ad val.

\*    \*    \*    \*    \*    \*    \*    \*

684.70    Microphones; loudspeakers; headphones; audio-frequency electric amplifiers; electric sound amplifier sets comprised of the foregoing components; and parts of the foregoing articles (including microphone stands) ............. 15% ad val.

\*    \*    \*    \*    \*    \*    \*    \*

*Schedule 7.—Specified Products; Miscellaneous and Nonenumerated Products*

\*    \*    \*    \*    \*    \*    \*    \*    \*

Part 2—Optical Goods; Scientific and Professional Instruments; Watches, Clocks, and Timing De-

---

1. The Government concedes also that the microphones, but not the coils, are chiefly used as parts of hearing aids.

2. The Government admitted in its answer that receivers were properly classifiable under item 709.50 and judgment was entered sustaining the protests to that extent.

vices; Photographic Goods; Motion Pictures; Recordings and Recording Media

\* \* \* \* \* \* \* \*

Subpart B.—Medical and Surgical Instruments and Apparatus; X-ray Apparatus

\* \* \* \* \* \* \* \*

709.50 Hearing aids and parts thereof .............. 12% ad val.
[1966 rate]
9.5%· ad val.
[1969 rate]

## GENERAL HEADNOTES AND RULES OF INTERPRETATION

10. *General Interpretative Rules.* For the purposes of these schedules—

\* \* \* \* \* \* \* \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, *but does not prevail over a specific provision for such part.* [Emphasis ours.]

———◆———

The parties and the court below have treated the microphones and coils separately. So shall we.

### The Microphones

The Customs Court held that appellants failed to show that the imports invoiced as microphones were not "microphones" within the ambit of item 684.70. Appellants concede that the imported goods are commonly known in the trade as "microphones" and that item 684.70 is an *eo nomine* provision for microphones. The Customs Court found that the primary function of the goods at bar is conversion of acoustical energy into electrical energy, fitting the technical definition of "microphones." These findings clearly conform to the weight of the evidence and we accept them. Montgomery Ward & Co. v. United States, 61 CCPA ——, C.A.D. 1131, 499 F.2d 1283 (1974). Appellants contend, however, that item 684.70 is not a specific provision for the microphones at bar and thus General Interpretative Rule 10(ij) does not require classification of these microphones under the *eo nomine* provision.

■■ In the absence of contrary legislative intent, an *eo nomine* provision for an article includes all forms of the article. Nootka Packing Co. v. United States, 22 CCPA 464, T.D. 47464 (1935). Appellants have not demonstrated that the term "microphones" in item 684.70 was not intended by Congress to include the merchandise at bar.

■ Appellants agree with the Customs Court that there is minimal direct legislative history to indicate what Congress intended the breadth of item 684.-70 to be and suggest that heading 85.14 to the *Brussels Nomenclature* [3] fills the gap, alleging that the scheme adopted by Congress is similar thereto. Even were there some basis to conclude that Congress enacted the *substance* of the Tariff Schedules with this heading to the

3. The Explanatory Note to this heading indicates that it covers "microphones, loudspeakers, and audio-frequency amplifiers *of all kinds* imported separately, *regardless of the particular purposes for which such apparatus may be designed."* [Emphasis ours.] Heading 85.14 provides expressly that it does not cover "deaf aids." We do not understand appellants to contend that the microphones are themselves "deaf aids."

Brussels Nomenclature in mind,[4] we do not consider heading 85.14 to be evidence of intent clear enough to require classification of these microphones outside the *eo nomine* provision.

■ Appellants argue in the alternative that "parts of hearing aids" is a designation more specific to the merchandise at bar than "microphones" and that accordingly the rule of relative specificity [5] requires classification as parts of hearing aids. We disagree, Item 709.50 includes parts of electrical hearing aids unnamed in item 684.70, such as the case and the power supply; the legislative history of the item shows it is also intended to cover ear trumpets and .other *non*-electrical hearing aids.[6] The term "microphone" on the other hand pertains only to electrical devices which convert acoustical energy into electrical energy. This is not a case like C. J. Tower & Sons v. United States, 44 CCPA 41, C.A.D. 634 (1957), where the tariff term was shown not to include everything falling within its literal scope. We there rejected the argument that all corn is "corn," in light, inter alia, of prior administrative construction.

We conclude that the Customs Court properly read the term "microphones" in accordance with its meaning in the trade, see Brown Boveri Corp. v. United States, 53 CCPA 19, C.A.D. 870 (1966), and agree that appellants did not overcome the presumption of correctness attaching to the Government's *classification*.[7]

*The Coils*

■ The Customs Court opinion observes:

In short, the evidence does preponderantly establish that the imported coils are manufactured to exacting design specifications; that the imported coils are not made to any specific level of inductance; that the inductance of the coil is secondary to the design considerations, and that the imported coils are dealt with in the trade as "coils" rather than as "inductors". The sum of that evidence, however, is not sufficiently relevant to overcome the presumption that the coils, in the manner of their use and application in miniature magnetic transducers, are inductors within the common meaning of the term. To the contrary, as I suggested earlier, the evidence of how the coils function in transducers tends to support the classification of these imported coils as inductors.

Plaintiffs' witnesses testified to the use and function of the imported coils in miniature magnetic transducers and flatly opined that the imported coils were not inductors. But their opinions, as mentioned earlier, were preponderantly based on facts too inconclusive to establish that the coils were not inductors in the common meaning of the tariff term. The lack of concern for the property of inductance in the coils, constantly adverted to in the testimony, in my opinion, is quite immaterial since the inductance native in

4. Tariff Classification Study, Submitting Report (1960), at 8:
   The "Brussels Nomenclature" and the "Standard Industrial Classification Manual" exerted the greatest influence on the *arrangement* of the proposed revised schedules. [Emphasis ours.]
   Schwarz v. United States, 57 CCPA 19, C.A.D. 971, 417 F.2d 1391 (1969); F. L. Smidth & Co. v. United States, 56 CCPA 77, C.A.D. 958, 409 F.2d 1369 (1969).

5. General Interpretative Rule 10(c) provides:
   * * * an imported article which is described in two or more provisions of the schedules is classifiable in the provision

which most specifically describes it * * *.

6. Tariff Classification Study, Vol. 9 at 147.

7. Appellants consider the Government's admission that the receivers (output transducers) are classifiable under item 709.50 strong evidence that the microphones, which are similar in structure to the receivers, should be classified likewise. There is argument, but no evidence of record, concerning the Government's motives in conceding the protest as to the receivers. In the absence of explanatory evidence, the Customs Court saw no reason to give the Government's admission any weight with respect to the classification of the microphones, nor do we.

the coils is not established to be insufficient for application in miniature magnetic transducers. Plaintiffs' witnesses also testified that the function of the coils involved a process of induction which they said was not inductance. Such testimony, in my opinion, does no more than suggest a possible distinction which, for all that is said, may be a distinction without a difference.

One of plaintiffs' witnesses testified that the induction process he described was different from inductance as defined by McGraw-Hill, for the reason there was no current creating the magnetic field. (R.90.) Weighing the testimony of plaintiffs' witnesses on cross-examination, however, it is apparent that while they were inclined to equivocate, they were unable to deny that the imported coils have the property of inductance and that the manner in which the imported coils function in miniature magnetic transducers is a process of induction.

\* \* \* \* \* \*

Thus, notwithstanding plaintiffs' witnesses were of the opinion that the coils were not inductors, their explanation of the function of the coils in miniature magnetic transducers strongly supports that the coils do function to assist in the conversion of energy by inductance. The classification of the coils as inductors is presumed to include each and every fact necessary to support the classification, E. I. du Pont de Nemours & Co. v. United States, 27 CCPA 146, 149, C. A.D. 75 (1939), and the explanation of the function of the coils appears to involve electromagnetic induction which, as discussed in the McGraw-Hill Encyclopedia of Science and Technology, Vol. 7, at 69, is:

The production of an electromotive force either by motion of a conductor through a magnetic field in such a manner as to cut across the magnetic flux or by a change in the magnetic flux that threads a conductor.

The customs classification is further supported by the opinion of defendant's witness, who testified that the coils are inductors and explained in fuller detail than did plaintffs' witnesses the manner in which the coils function as inductors in miniature magnetic transducers to produce an electromotive force. [Footnotes omitted.]

We find appellants' explanation of the difference between "induction" and "inductance" in the context of the function of the coils in transducers no more convincing than did the the Customs Court, which had the parties' witnesses before it and was in a better position than we are, on the appellate level, to assess their credibility. Based on our consideration of the conflicting testimony and exhibits, the oral arguments, and the briefs, we conclude that the findings of the Customs Court reproduced supra are amply supported by the evidence. We agree that evidence the coils were not *designed* with inductance in mind, when rebutted by evidence the coils actually *function* by the process of induction when used in transducers, does not prove that the coils are not "inductors" for tariff purposes. It was also well within the province of the Customs Court as the trier of fact to accept the testimony of the Government's witness, an employee of a large manufacturer of these coils, that the coils function as inductors in transducers.

The judgment of the Customs Court is affirmed.

Affirmed.