CARLING ELECTRIC CO.,
(Carlingswitch, Inc.),
Appellant,

v.

The UNITED STATES, Appellee.

Appeal No. 84–1532.

United States Court of Appeals,
Federal Circuit.

March 21, 1985.

Charles P. Deem, Shaw & Stedina, New York City, argued for appellant.

Veronica A. Perry, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With her on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Joseph I. Liebman, Attorney in Charge, International Trade Field Office, New York City.

Before MARKEY, Chief Judge, and BENNETT and SMITH, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a decision of the United States Court of International Trade (CIT) sustaining Customs' classification and dismissing Carling Electric Company's (Carling's) complaint. *Carling Electric Co. (Carlingswitch, Inc.) v. United States,* 592 F.Supp. 667 (Ct.Int'l Trade 1984). We affirm.

## Background

Two articles of merchandise were imported from Mexico and entered at the Port of Brownsville, Texas in 1976. The first was a small light bulb in a socket with two wire conductors extending from the socket (light).[1] The second was a small housing containing a switch and a light that glowed when the switch actuator was moved to the "on" position (lighted switch).[2] Customs classified the former as electrical articles or electrical parts of articles under Item 688.40 of the Tariff Schedules of the United States (TSUS), dutiable at the rate of 5.5% ad valorem, and the latter as electrical switches under TSUS item 685.90, dutiable at the rate of 8.5% ad valorem.

Carling claimed that the light is properly classifiable as visual signalling apparatus or parts thereof pursuant to TSUS item 685.70, dutiable at the rate of 4% ad valorem, and that the lighted switch should be classified under TSUS item 688.40, dutiable at the rate of 5.5% ad valorem.

The pertinent statutes are:

Light:

Classified:

688.40 Electrical articles, and electrical parts of articles, not specially provided for ............... 5.5% ad val.

Claimed:

685.70 Bells, sirens, indicator panels, burglar and fire alarms, and other sound or visual signaling apparatus, all the foregoing which are electrical, and parts thereof ............................. 4% ad val.

Lighted Switch:

Classified:

685.90 Electrical switches, relays, fuses, lightning arrestors, plugs, receptacles, lamp sockets, terminals, terminal strips, junction boxes, and other electrical apparatus for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels; all the foregoing and parts thereof .. 8.5% ad val.

Claimed:

688.40 Electrical articles, and electrical parts of articles not specially provided for ............... 5.5% ad val.

The CIT found that Customs properly classified the light, and that Carling failed to overcome the presumption of correctness due Customs' classification and to prove that its claimed classification was correct, because the light does not operate only in temporary or emergency conditions. The CIT also found that Customs properly classified the lighted switch, and that Carling failed to prove either that Customs' classification was wrong or that its claimed classification was correct, specifically that Carling had not proved that the light component is co-equal with the switch component in the lighted switch and thus failed to prove that that imported article was "more than" an electrical switch.

## Issues

1. Whether the CIT erred in sustaining Customs' classification of the light.

---

1. Carling's brief labels this article an "indicator light".

2. Carling's brief labels this article "combination indicator light and switch".

2. Whether the CIT erred in sustaining Customs' classification of the lighted switch.

## OPINION

### (1) *Light*

Carling argues that its light may be used with a wide variety of products, and when so used, its illumination informs an observer of some fact. On that premise, it argues that the light is a visual signalling apparatus or part thereof and classifiable under item 685.70. Carling's difficulty is twofold: (1) goods are classified in the condition in which imported, and the light itself, the best witness, establishes that, as imported, it is just that, a light; and (2) item 685.70 is not a chief-use provision.

The parties have devoted substantial discussion to an indication in *Amersham Corp. v. United States*, 564 F.Supp. 813, 825 (Ct.Int'l Trade 1983), *aff'd*, 728 F.2d 1453 (Fed.Cir.1984), that item 685.70 requires that an article function in temporary or abnormal situations, and to the testimony of Carling's expert, Mr. Frederick Kundahl, that the imported light was designed to be operated continuously. In view of the nature of the imported merchandise in this case, we need not and therefore do not resolve the conflicting arguments rising from that discussion.[3]

The record, and Carling's own argument, establish that no signal of any kind can possibly occur until the light is installed in something else. The light, in its imported condition has no function or practical application in and of itself (except as an electrical article). It is at most capable of use as part of other electrical articles, such as microphones, roasters, coffee makers, or freezers, none of which is itself a signalling apparatus. Carling's argument that the light conveys "information" depends entirely on incorporation of the light in some-

thing else. As imported, the light is, when connected in an electrical circuit, capable of conveying only the information that it is or is not glowing, the same information conveyed by every light bulb. The light is not in itself a "visually signalling apparatus", nor is it any of the other articles set forth *eo nomine* in TSUS item 685.70.

■ The CIT correctly held that the imported light is not visual signalling apparatus or parts thereof, and that it was properly classified under TSUS item 688.40, as electrical parts of articles. Carling has not shown that classification to have been wrong.

### (2) *Lighted Switch*

Carling claims that the imported switches are "more than" switches because they have an illumination feature, but makes no effort to show that "electrical switches" or the scope of TSUS item 685.90 is too narrow to include the imported article. *Cf. E. Green & Son (New York), Inc. v. United States*, 450 F.2d 1396 (CCPA 1971).

An *eo nomine* provision, such as that for switches, includes all forms of the article, *Knowles Electronics v. United States*, 504 F.2d 1403, 1405 (CCPA 1974) (miniature electrical devices for assembly into hearing aids were forms of "microphones" in item 684.70). Based on the common meaning of "switch", the imported article is clearly a form of switch.

Mr. Richard Sorenson (Sorenson), president of Carling, testified that a switch is defined "as a device which performs the function of opening or closing a circuit." Sorenson also testified that a switch indicates whether it is on or off "because a switch itself is, by virtue of the actuator being in a different position, between on and off, indicates whether it is on or off."

---

**3.** Carling argues that item 685.70 has been inconsistently defined in certain trial court opinions accompanying judgments that were not appealed from. *Oxford Int'l Corp. v. United States*, 70 Cust.Ct. 217, C.D. 4433 (1973); *Oxford Int'l Corp. v. United States*, 75 Cust.Ct. 58, C.D. 4608

(1975); *A & A Int'l Inc. v. United States*, No. 83–42 (Ct.Int'l Trade May 10, 1983). Because those cases are not precedent in this court, we need not, and therefore do not, respond to the argument.

The light included in the switch housing is integrally wired and is dependent on operation of the switch. The switch is not dependent on operation of the light. The function of the light (when illuminated) is to inform the user that the switch is in a particular position, normally "on". The CIT held, and Carling has not shown to the contrary, that the light merely enhances a function already performed by the switch. Slip Op. at 14.

Whether two functions are co-equal, or primary and secondary, is a question of fact. Because the light is dependent on operation of the switch, its function is incidental, subordinate, and secondary to the primary function of the switch. The CIT correctly determined that "the switching function is the key element in the lighted switches device," Slip Op. at 14, and correctly applied the principle that "where an article has both a primary and an incidental function subordinate to the primary function, the primary function governs classification." Slip Op. at 12. *See also Trans-Atlantic Co. v. United States*, 471 F.2d 1397, 1399 (CCPA 1973).

Carling's reliance on *The Ashflash Corp. v. United States*, 412 F.Supp. 585, CD 4643 (Cust.Ct.1976) and *Fedtro, Inc. v. United States*, 449 F.2d 1395 (CCPA 1971), is misplaced. In *Ashflash*, which is not precedent in this court, the merchandise was a combination having a searchlight component and signal-warning flasher component—the components having totally independent functions and being operated separately from one another. The Customs Court there noted, "the signal warning function did not assist, improve or augment the searchlight function." 412 F.Supp. at 587. Here the light merely augments the switch's function, making it easier under some conditions to tell the position of the switch. *Fedtro* also involved a combination article having two separate, independent functions: a 4-way flasher switch made all signal lights of a car flash, and a light wired independently to the brake light switch indicated when the brakes were engaged. Here the switch and light are wired integrally and operation of the light

is totally dependent on operation of the switch.

 The CIT correctly held that the lighted switch is not "more than" a switch and that it was properly classified under TSUS item 685.90, as electrical switches. Carling has not shown that classification to have been wrong.

AFFIRMED.