WALLACE BERRIE & CO., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 84–07–00937

104

(Decided February 9, 1988)

*Sandler & Travis, P.A. (John N. Politis)* for plaintiff.

*Richard K. Willard,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Department of Justice *(Susan Handler-Menahem)* for defendant.

DiCARLO, *Judge:* This action concerns the proper tariff classification of 22 styles of "Super Smurfs" imported from Hong Kong. The United States Customs Service (Customs) classified the contested entries (exhibits 6–27) under item 737.95 of the Tariff Schedules of the United States (TSUS), a basket provision for toys not specially provided for elsewhere in the tariff schedules, at duty rates of 14.9% ad valorem for merchandise entered during 1981 and 13.6% ad valorem for merchandise entered during 1982. Plaintiff, Wallace Berrie & Co. ("importer"), claims the merchandise is properly classifiable under item 737.40, TSUS, as "[t]oy figures of animate objects (except dolls): [n]ot having a spring mechanism: [n]ot stuffed: other" and eligible for duty-free treatment under the Generalized System of Preferences. Alternatively, plaintiff claims that the merchandise should be classifiable in part under item 737.40, TSUS, and in part under item 737.95, TSUS.

Defendant contends the merchandise was properly classified under item 737.95, TSUS, and counterclaims for $543.46 plus interest dating from the time of liquidation for uncollected duties on styles 6711, 6715, and 6718 in entry number 184529. Defendant also offers an affirmative defense that if the merchandise is found to be properly classifiable as plaintiff claims, it would still not enjoy duty-free treatment because the "Forms A" are legally insufficient.

This Court has jurisdiction under 28 U.S.C. §§ 1581(a) and 1583 (1982). The Court holds that Customs properly classified the 22 styles of Super Smurfs under item 737.95, TSUS, and that the United States is entitled to judgment on its counterclaim, with interest from the date of liquidation at the rate provided for under 28 U.S.C. § 2644 (1982).

## CLASSIFICATION OF THE MERCHANDISE

Smurfs are small, blue, imaginary characters. The merchandise at issue in this case consists of plastic or rubber Smurf figures which are postured to engage in various activities with accompanying plastic accessories. The Smurf figures and accessories are packaged together and offered for sale as "Super Smurfs." As an example, exhibit 6 (Super Smurf model 6505) is a Smurf figure with two holes in his feet, into which two prongs of a plastic leaf are inserted. Plastic wheels inserted into holders on the bottom of the leaf create a skateboard which the Smurf figure rides. In similar fashion, other styles of Super Smurfs ride tricycles, cars, and go-carts.

A review of the trial testimony and an examination of the samples in this case reveal that the Smurf figures in the "Super Smurf" packages are in a fixed position which cannot be altered, and that

they are specifically designed to be united with the toy accompaniments. The Smurf figures and toy accompaniments are designed and intended to be used together, and are essential to the completeness of each other. The figures and toy accompaniments are packaged and marketed as one single product. Many of the figures in the Super Smurf packages cannot stand or balance by themselves unless they are assembled with the toy accompaniments. There is no or very limited interchangeability of use between the figures and the toy accompaniments. Several of the styles of Super Smurfs not only contain interlocking parts, but also pegs designed to be inserted into holes for assembly. Some of the styles are even assembled in their imported condition; some permanently. Additionally, all of the figures in the Super Smurf packages are inflexibly posed in positions appropriate to the activity each Super Smurf is designed to depict.

The evidence also shows that each of the 22 styles of Super Smurfs comprises more than just a figure of an animate object. The catalogs and packaging introduced into evidence depict Smurf figures playing with the toy accompaniments. A consultant for the importer testified that the Smurf figures are designed to be used with the particular accessory with which they are boxed. R. 19. The importer's senior product manager testified that "what was in the box was more than just a figurine" and "more than just a Smurf." R. 29. A witness who had played with the Super Smurf when she was seven years old testified that she "wanted something more than just the Smurfs to play with." R. 46. A licensed clinical psychologist testified that the addition of the toy accessories gave something more or different to the Smurf figures. R. 82. Each of the importer's witnesses thus offered testimony to support the single conclusion that the contested merchandise is more than just a figure of an animate object.

The sum of the evidence establishes that the components form a new article of commerce to which the individual components are subordinate. The articles carry a natural affinity and are designed in relation to each other. The samples and testimony from the trial establish that the styles of merchandise, as imported, are classifiable as entireties. The evidence also shows that each of the 22 styles of Super Smurfs comprises more than just a figure of an animate object. The importer has failed to overcome the presumption of correctness that attaches to the Customs classification, or show that its claimed classification provision is correct. *See* 28 U.S.C. § 2639(a)(1) (1982); *Stewart-Warner Corp.* v. *United States*, 3 Fed. Cir. (T) 20, 22, 748 F.2d 663, 665 (1984); *Childcraft Educational Corp.* v. *United States*, 2 Fed. Cir. (T) 121, 122, 742 F.2d 1413, 1414 (1984); *E.R. Hawthorne & Co.* v. *United States*, 2 Fed. Cir. (T) 53, 53, 730 F.2d 1490, 1490 (1984). As entireties, the contested merchandise is prop-

erly classifiable under item 737.95, TSUS, the basket provision for toys not specially provided for elsewhere in the tariff schedules.

IMPORTER'S ALTERNATIVE CLAIM

As an alternative claim, the importer contends that the Smurf figures should be separately classified under item 737.40, TSUS, and the toy accompaniments under item 737.95, TSUS. The importer offered testimony that children would play with the Smurf figures alone if the accessories were lost, and thus argues that the various pieces of the Super Smurfs should be separately classified.

The Court does not look to fugitive uses of merchandise in ruling on the correctness of a Customs classification. "The rule of construction of tariff statutes is that 'in order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported.'" *Austin Chemical Co. v. United States*, No. 87–1331, slip op. at 5 (Fed. Cir. Dec. 31, 1987) (citing *United States v. Citroen*, 223 U.S. 407, 414–15 (1912), and *Carling Elec. Co. v. United States*, 757 F.2d 1285, 1287 (Fed. Cir. 1985)). Classification is determined by the condition of the articles at the time of importation. *Miniature Fashions, Inc. v. United States*, 54 CCPA 11, 17, C.A.D. 894 (1966). The evidence in this case, as already discussed, establishes that the merchandise, as imported, is an entirety for purposes of tariff classification.

Defendant concedes that if the Smurf figures were imported separately, they would be classifiable under item 737.40, TSUS, as toy figures of animate objects. Defendant also concedes that if the toy accompaniments were imported separately, they would be classifiable under item 737.95, TSUS. Defendant's Post-Trial Brief at 12 n.4.

The doctrine of entireties does not apply where articles, even though destined for use in combination, are not imported together. *United States v. Baldt Anchor, Chain & Forge Div. of Boston Metals Co.*, 59 CCPA 122, 126, C.A.D. 1051, 459 F.2d 1403, 1406 (1972); *Franklin Indus. v. United States*, 1 CIT 349, 350 (1981). The doctrine of entireties does apply to the Smurf figures and toy accompaniments imported together in the Super Smurf package. In this condition of importation, the importer's alternative claim is without merit.

COUNTER-CLAIM FOR UNCOLLECTED DUTIES

On January 28, 1987, the government filed a counter-claim for $543.46 in uncollected duties on model numbers 6711, 6715, and 6718 in entry number 184529. These models are classifiable under item 737.95, TSUS. The commercial invoice attached to the consumption entry form shows that Customs classified these styles of Super Smurfs under item 737.95, TSUS, but failed to charge any duty when it liquidated the merchandise on March 25, 1983.

The importer acknowledged in its answer that this Court has jurisdiction over the counterclaim, but asserted that the counterclaim is invalid because the protest was filed against those Super Smurfs which were classified under item 737.95, TSUS, and assessed with duty at 13.6% ad valorem. The importer advances the theory that if no duties were paid on those models, they are not the subject of the protest and are not before the Court for decision.

This Court has exclusive jurisdiction over counterclaims "if (1) such claim or action involves the imported merchandise that is the subject matter of such civil action, or (2) such claim or action is to recover upon a bond or customs relating to such merchandise." 28 U.S.C. § 1583(1). The government's counterclaim is an action to recover customs duties relating to the merchandise.

The importer did not merely protest Super Smurfs assessed with duty at 14.9% ad valorem. The protest form contains language that the importer's protest was "intended to cover all merchandise of the same category, class, kind or character as that herein specified and covered by the entry or entries referred to whether or not particularly set forth herein." The importer did not specifically exclude merchandise that was entered without paying the duties owed. The government's counterclaim involves the imported merchandise that is the subject of the importer's civil action to challenge the Customs classification. This Court has jurisdiction and grants the government's counterclaim for the uncollected duties.

### PREJUDGMENT INTEREST

The government also moves for prejudgment interest on the uncollected duties, dating from the date of liquidation. Our appellate court recently addressed the issue of this Court's discretion to award prejudgment interest, finding that it is within the discretion of the Court of International Trade as part of its equitable powers to award prejudgment interest in cases where no statute specifically authorizes such an award. *United States* v. *Imperial Food Imports,* 834 F.2d 1013 (Fed. Cir. 1987). The Federal Circuit also adopted language from an earlier decision of this Court on the availability of prejudgment interest:

> In the present case, it is obvious that if prejudgment interest were not awarded to the Government, nonpayment of estimated duties would amount to an interest-free loan of the money owing the Government from the due dates for payment until recovery. Plainly, then, as a matter of equity and fairness, the United States should be compensated for the loss of use of the money due.

*Id.* at 1016 (quoting *United States* v. *Goodman,* 6 CIT 132, 140, 572 F. Supp. 1284, 1289 (1983)).

In this action an award of prejudgment interest repays the government for the "loan" of the money that the importer owed when the merchandise was liquidated. The Court awards prejudgment interest at the rate provided for in 28 U.S.C. § 2644 (1982), calculated from the date of liquidation.

CONCLUSION

The Customs classification of the Super Smurfs under item 737.95, TSUS, is affirmed. The government is awarded $534.46 on its counterclaim, plus interest calculated from the date of liquidation of the entry on the basis of the rate provided for in 28 U.S.C. § 2644 (1982).