F.W. MYERS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 84–02–00261

(Decided June 16, 1988)

*Ross & Hardies* (*Joseph S. Kaplan*) on the motion) for the plaintiff.

*Richard K. Willard,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, United States Department of Justice, Commercial Litigation Branch (*Michael P. Maxwell* on the motion) for the defendant.

## MEMORANDUM OPINION

CARMAN, *Judge:* Plaintiff challenges the United States Customs Service (Customs) classification of its merchandise as "tractors" under item 692.35 of the Tariff Schedules of the United States [TSUS]. The merchandise was assessed duty at a rate of 4.3% *ad valorem* in 1982 and 3.9% *ad valorem* in 1983. Plaintiff contends the merchandise should be classified under TSUS item 692.11 as Canadian motor vehicles for the transport of persons or articles. In the alternative, plaintiff urges that the merchandise should be classified under TSUS item 692.34 as tractors suitable for agricultural use. Under either provision, the merchandise would qualify for duty-free status. As this case concerns the denial of a protest pursuant to section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515 (1982), jurisdiction is predicated upon 28 U.S.C. § 1581(a) (1982).

After considering the evidence presented including the testimony of witnesses at the trial, the Court determines the common meaning of the term "tractor," as urged by plaintiff, to be a motor vehicle used primarily for pushing or pulling an appliance or load. Since the plaintiff has shown that the primary function of its merchandise is for transporting persons or articles and not for pushing or pulling an appliance or load, the Court finds that Customs incorrectly classified the merchandise as "tractors," under TSUS item 692.35. The Court further finds that the merchandise should have been classified under the heading of "motor vehicles for the transport of persons or articles" under TSUS item 692.11. Because there is insufficient evidence from which to conclude that the merchandise is "Canadian," for the purpose of item 692.11, however, the Court remands this action to Customs for further investigation.

## FACTS

Plaintiff, F.W. Myers, Inc., is a licensed Customshouse Broker and the importer of record of the subject merchandise. The merchandise is identified as Bombardier BR–200 vehicles, which are self-propelled, track type all-terrain vehicles. The vehicles were manufactured by Bombardier, Inc., of Canada (Bombardier) and purchased by Utility Equipment Company, Inc. (Utility), a domestic company engaged in the sale and servicing of equipment to electric power companies. The vehicles were resold to the United States Department of Energy, Bonneville Power Administration (BPA) of Vancouver, Washington.

The BR–200 vehicles were built by Bonbardier in accordance with detailed specifications of the BPA. *See* Plaintiff's Exhibit 1, *F.W. Myers, Inc.* v. *United States* (No. 84–02–00261) [PX 1]. The specifications require the vehciles to operate for long distances over rough

terrain in snow, brush, and mud and on BPA access roads to maintain electric transmission lines and microwave and radio stations. *Id.* at 1. The specifications require the vehicles to be capable of transporting men, tools, and materials to these off-road work sites. Transcript at 18, *F.W. Myers, Inc.* v. *United States,* (No. 84–02–00261) [Transcript]. The vehicles have roll over protection designed to prevent the crushing of operators during any type of rollover. PX 1, *supra,* at 4. The vehicles must be capable of turning within their own length. They must operate on a slope of approximately 39 degrees, traverse a firm dirt incline of approximately 27 degrees, and have a ground pressure of not more than 1.1 pounds per square inch. *Id.* at 3. Some of the vehicles are equipped with a trailer hitch of a type used for recreational or light commercial trailers. Transcript, *supra,* at 30. All vehicles are equipped with a mechanical or hydraulic winch. PX 1, *supra,* at 6.

The general design of the BR–200 consists of an engine and drive train to propel the vehicle, a cab for passengers and a transporting trailer for equipment and materials, tracks for flotation and traction in snow and mud, and a chassis on which to mount the other components. A reproduction of the vehicle is shown below:

Joint Exhibit 2A, *F.W. Myers, Inc.* v. *United States* (No. 84–02–00261).

Customs classified the vehicles as "tractors" under TSUS item 692.35 which provides in pertinent part:

> Tractors * * * whether or not equipped with power take-offs, winches, or pulleys, and parts of such tractors:
>
>        *       *       *       *       *       *       *

692.35    Other ................4.3% *ad valorem* (1982)[1]
                           3.9% *ad valorem* (1983)[2]

Plaintiff contends the BR–200 vehicles should have been classified as motor vehicles for the transport of persons or articles under TSUS item 692.11 which provides in relevant part:

> Motor vehicles (except motorcycles) for the transport of persons or articles:
>
>        *       *       *       *       *       *       *
>
> Other
>
>        *       *       *       *       *       *       *
>
> > If Canadian article, but not including any three-wheeled vehicle (see general headnote 3(e) ....... Free

General Headnote 3(e) supplies a definition for the term "Canadian article:"

> (ii) The term "Canadian article," as used in the schedules, means an article which is the product of Canada, but does not include any article produced with the use of materials imported into Canada which are products of any foreign country * * * if the aggregate value of such imported materials * * * was—
>
>        *       *       *       *       *       *       *
>
> > (B) more than 50 per cent of the appraised value of the article imported into the customs territory of the United States.

As an alternative claim, plaintiff maintains the imported vehicles should have been classified as tractors suitable for agricultural use under item 692.34, TSUS. This section provides in pertinent part:

> Tractors * * * whether or not equipped with power take-offs, winches, or pulleys, and parts of such tractors:
>
> > Tractors suitable for agricultural use,
> > and parts thereof ................................... Free

### DISCUSSION

At the outset, it is important to note that a classification by Customs is presumed to be correct, and the party challenging the decision bears the burden of proving that the classification is incorrect.

---

[1] As modified by Pres. Proc. 4707.

[2] *Id.*

28 U.S.C. § 2639(a)(1) (1982); *Jarvis Clark Co.* v. *United States,* 2 Fed. Cir. (T) 70, 72, 733 F.2d 873, 876 (1984), *reh'g denied,* 2 Fed. Cir. (T) 97, 739 F.2d 628 (1984). The party challenging the classification need not establish that its proposed classification is correct. The reviewing Court must ascertain the correct classification by determining "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark,* 2 Fed. Cir. (T) at 75, 733 F.2d at 878. In addition, "the [Court of International Trade] * * * may order such further administrative or adjudicative procedures as the court considers necessary to enable it to reach the correct decision." 28 U.S.C. § 2643(b) (1982).

A. *Common Meaning of "tractor"*

While the term "tractor" is not defined in the TSUS, it is well settled that tariff acts must be construed to carry out the intent of the legislature. *Nippon Kogaku (USA), Inc.* v. *United States,* 69 CCPA 89, 92, 673 F.2d 380, 382 (1982). A tariff term is construed in accordance with the common and commercial meanings which are presumed to be the same. *Id.* It is further presumed that Congress knows the language of commerce and has framed a tariff term according to the general usage and denominations of trade. *Nylos Trading Company* v. *United States,* 37 CCPA 71, 73, C.A.D. 422 (1949).

The common meaning of a tariff term is a question of law to be determined by the Court. The Court may consult dictionaries, scientific authorities, and other reliable sources of information to ascertain this meaning. *C.J. Tower & Sons of Buffalo, Inc.* v. *United States,* 69 CCPA 128, 133, 673 F.2d 1268, 1271 (1982); *Schott Optical Glass, Inc.* v. *United States,* 82 Cust. Ct. 11, 16, C.D. 4783, 468 F. Supp. 1318, 1321 (1979), *aff'd,* 67 CCPA 32, 34, C.A.D. 1239, 612 F.2d 1283, 1285 (1979).

Plaintiff contends that the common or dictionary meaning of "tractor" is a motor vehicle used primarily for pushing or pulling an appliance or load. Because the BR–200 vehicles are used primarily for transporting persons or articles, plaintiff maintains that the vehicles should not be classified as "tractors" within the meaning of the TSUS. The defendant, on the other hand, urges that a broader meaning of a "tractor" should be applied because a "tractor" may be used for many purposes.

In the search for the common meaning of the *eo nomine* provision for tractor, the Court has consulted several definitions, the first of which provides as follows:

> A wheeled, self-propelled vehicle for hauling other vehicles or equipment and for operating the towed implements; also, a crawler which runs on an endless, self-laid track and performs similar functions.

18 McGraw-Hill Encyclopedia of Science & Technology 449 (1987). Tractor is further defined as:

an apparatus or device for the draft or sometimes propulsion of another body: as * * * (b)(1): a 4-wheeled or caterpillar-tread rider-controlled automotive vehicle used esp. for drawing agricultural or other implements or for bearing and propelling such implements * * *.

Webster's Third New International Dictionary 2421 (1981).

Crawlers or track-type tractors are characterized as those "used primarily for earthmoving * * *. Field operating speed is relatively slow * * * which limits their use to pulling extremely heavy loads or to work on steep slopes." 26 Encyclopedia Americana 907 (1973). The definition provided by 16 Collier's Encyclopedia 650 (1979) is as follows:

> The tractor, as classified here, is a motor vehicle especially suited to farm construction work. It may carry its own tools for working the ground, or for other services, or it may serve to haul mechanical devices, wagons, and trailers.

*Id.* Based on the foregoing definitions, the Court finds the dictionary and encyclopedia sources neither refute nor clearly establish the proposition that the primary characteristic of a tractor is the facility for pushing and pulling an appliance or load.

The Court therefore turns to the testimony given at the trial of the instant action. While testimony may serve as an aid in understanding the common meaning of a term, such testimony is not conclusive or binding on the Court. Testimony can be accorded such weight as the Court deems proper. *Toyota Motor Sales, U.S.A., Inc.* v. *United States,* 7 CIT 178, 183–84, 585 F.Supp. 649, 654 (1984), *aff'd* 3 Fed. Cir. (T) 93, 753 F.2d 1061 (1985); *Tropical Craft Corp.* v. *United States,* 45 CCPA 59, 61 C.A.D. 673 (1958). With regard to the determination of the common meaning of the term "tractor," the Court finds the testimony to be conflicting, tentative, and generally not helpful in determining whether a broad or narrow common meaning attaches to the term "tractor." The mere fact that several of the witnesses used the term "tractor" to describe the BR–200 is not dispositive of the common meaning.

When a word has both a broad and narrow common meaning, it is proper to refer to the legislative history, administrative practice, sections related to those in which the term appeared, and other "external aids." *Sears, Roebuck & Co.* v. *United States,* 26 CCPA 161, 167, C.A.D. 11 (1938) (citing *Norwegian Nitrogen Products Co.* v. *United States,* 288 U.S. 294, 317–19 (1933)). One such legislative reference is the *Tariff Classification Study* which in Schedule 6, Part 6 (1960) provides as follows:

> Item 692.30 would put on a sounder basis the existing treatment of tractors as agricultural implements under paragraph 1604 of the free list of the Tariff Act of 1930. In recent years, practically all imports of tractors have been admitted free under paragraph 1604. *Tractors are mobile power units used for*

> *many purposes, including agricultural, construction, road building, etc.* Attempts to distinguish so-called agricultural-type tractors from types chiefly used for non-agricultural purposes necessarily involve unrealistic distinctions. For years it was the practice to classify as agricultural implements only so-called wheel-type tractors. Within recent months a so-called half-tread tractor, said to be of special design for agricultural purposes, was held to be free as an agricultural implement. Item 692.30 would change the present "chief use" concept implicit in paragraph 1604 by providing for tractors "suitable for agricultural use."

*Id.* at 325 (emphasis added). Defendant contends this passage supports its contention that a broader meaning of "tractor" should be applied because a tractor may be used for many purposes. While this passage confirms that a tractor may be used for many purposes and provides a "suitability" test for agricultural usage, the passage is not helpful for the purpose of determining whether the descriptive meaning of a tractor, even in a non-agricultural context, is or is not limited primarily to pushing or pulling an appliance or load.

The Court therefore consults the explanation contained within the *Nomenclature for the Classification of Goods in Customs Tariffs,* commonly known as the "Brussels Nomenclature." The Brussels Nomenclature is considered a highly probative source for ascertaining legislative intent especially where the language and phraseology of the TSUS and Brussels Nomenclature are similar. *See, e.g., United States* v. *Abbey Rents,* 66 CCPA 2, 4, n.5, C.A.D. 1213, 585 F.2d 501, 504 n.5 (1978); *Schwarz* v. *United States,* 57 CCPA 19, C.A.D. 971, 417 F.2d 1391 (1969). *See also Tariff Classification Study, Submitting Report* 8 (1960). (The Brussels Nomenclature was one of the two classification systems which exerted the greatest influence on the arrangement of the proposed revised tariff schedules). The Brussels Nomenclature is a useful source of legislative history with respect to the tariff schedules when a nexus is established between the two sources by the utilization of identical or similar phraseology. *Mattel, Inc.* v. *United States,* 65 Cust. Ct. 616, 625, C.D. 4147 (1970). *See also Toyota Motor Sales,* 7 CIT at 185, 585 F. Supp. at 656. Heading 87–01 of the Brussels Nomenclature provides as follows:

> —TRACTORS (OTHER THAN THOSE FALLING WITHIN HEADING NO. 87.07), WHETHER OR NOT FITTED WITH POWER TAKE-OFFS, WINCHES OR PULLEYS (+).

For the purposes of comparison, the term "tractor" under the TSUS provides as follows:

> Tractors (except tractors in item 692.40 and except automobile truck tractors), whether or not equipped with power take-offs, winches or pulleys, and parts of such tractors.

The Court finds that the language and phraseology pertaining to the term tractor is sufficiently similar to establish a nexus between the two sources. The explanatory note to heading 87–01 of the Brussels Nomenclature further provides:

> For the purposes of this heading, tractors are deemed to be wheeled or tracked vehicles constructed solely or essentially for hauling or pushing another vehicle, appliance or load. They may contain subsidiary provision for the transport, in connection with the main use of the tractor, of tools, seeds, fertilisers or other goods, or provision for fitting with working tools as a subsidiary function.

The explanation attached to the term "tractor" in the Brussels Nomenclature therefore favors the more limited common meaning asserted by the plaintiff, that is, that a tractor is a wheeled or tracked vehicle constructed solely or essentially for hauling or pushing another vehicle, appliance, or load.

It is also helpful to refer to the administrative practice to assist in determining the common meaning of a tariff term. The United States Court of Appeals for the Federal Circuit has held that "[a]lthough an agency's interpretation of the statute under which it operates is entitled to some deference, 'this deference is constrained by [the] obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.'" *Al Tech Specialty Steel Corp.* v. *United States,* 3 Fed. Cir. (T) 1, 13, 745 F.2d 632, 642 (1984) (quoting *Southeastern Community College* v. *Davis,* 442 U.S. 397, 411, (1979)). In T.D. 85–192, 19 Cust. Bull. 456, 461 (1985), Customs reasoned that the subject merchandise, identified as a "Unimog," was not an automobile truck but was a "tractor" because it lacked the essential physical characteristics for transporting goods, and its design was primarily suitable for pushing and pulling an appliance or load. Customs further commented:

> The term "tractor" is commonly known to be a vehicle which is designed to push or pull an appliance or load. It is not a vehicle designed primarily for transporting of articles, although it may be suitable for limited use in transporting articles.

*Id.* at 461. Although Customs determined that the merchandise was not a tractor suitable for agricultural purposes, Customs classified the merchandise as a "tractor" because of its primary function of pushing and pulling an appliance or load. The explanation given by Customs in T.D. 85–192, albeit dicta, therefore supports the narrow definition of "tractor" asserted by plaintiff and is consistent with the explanatory note to the Brussels Nomenclature. The Court is therefore persuaded that the more correct common meaning of "tractor" is a motor vehicle primarily used for pushing and pulling an appliance or load.

## B. *Classification of Multifunction Articles*

It is well established that where merchandise has a single or primary function and an incidental, subordinate, or secondary function, the merchandise is classifiable on the basis of its primary design, construction, or function. *Carling Elec. Co.* v. *United States,* 7 CIT 303, 310, 592 F. Supp. 667, 672 (1984), *aff'd,* 3 Fed. Cir. (T) 109, 757 F.2d 1285 (1985) (citing *Trans-Atlantic Company* v. *United States,* 60 CCPA 100, 103, C.A.D. 1032, 471 F.2d 1397, 1399 (1973)). The question of whether a given function is secondary or coequal is one of fact. *ASEA, Inc.* v. *United States,* 7 CIT 128, 131, 587 F. Supp. 1072, 1073–74 (1984), *aff'd,* 3 Fed. Cir. (T) 35, 748 F.2d 676 (1984); *Tridon, Inc.* v. *United States,* 5 CIT 167, 169 (1983).

The evidence on record persuasively shows that the primary function or chief use of the BR–200 is to transport persons or articles, *see* Transcript, *supra,* at 18, 29, 35, 52, 68–69, and that the BR–200 has an incidental or subordinate function of pulling or pushing an appliance or load such as a trailer to the work site. *Id.* at 22, 30, 31, 35. The mere fact that the BR–200 has a tractor chassis and runs on treads is not controlling. The BR–200 is designed to meet the specification for a minimal cargo capacity of 18–20 square feet and a total payload capacity, including passengers, equipment, and materials of at least 1400 pounds. PX 1, *supra,* at 2–3. This cargo capacity is essential for carrying the people, tools, and repair materials to the work sites. Transcript, *supra,* at 29. In addition, some of the BR–200 vehicles as imported are equipped with a hitch, some are not. *Id.* at 40. The record indicates that the hitch attached to some of the BR–200 vehicles is a ball hitch not used primarily for hauling, but for tying down the vehicle while it is being loaded. *Id.* at 51. Moreover, the type of hitch attached to the BR–200 is not suitable for towing snow grooming equipment because it lacks the necessary support to hold the down load of the grooming equipment. *Id.* at 31–32. With respect to the winch, the BR–200 may be equipped with an electric or hydraulic winch. Either type of winch is used primarily for vehicle recovery, that is, to allow the crew to extricate the vehicle from a "stuck" condition. *Id.* at 32.

Accordingly, the Court finds that the BR–200 is used primarily for transporting persons and articles and that it has an auxiliary, incidental, and subordinate function of pushing or pulling an appliance or load. An analogous example of this principle is an automobile or truck attached with a trailer to its hitch. The automobile or truck maintains its primary function of transporting people and articles even though it may also incidentally haul a trailer or boat. Therefore, the Court holds that the presumption of correctness which ordinarily attaches to a Customs ruling has been overcome in this case. Since the Court finds that the BR–200 is not a "tractor" within the common meaning of that term, it is not necessary to address plaintiff's alternative claim that the BR–200 is classifiable as a tractor suitable for agricultural use.

With regard to the proper classification of the BR–200, the Court holds that the BR–200 vehicles should be classified under TSUS item 692.11 as "motor vehicles for the transport of persons or articles."

Because there is insufficient evidence on record to establish that the BR–200 is a "Canadian article" for the purpose of TSUS item 692.11, however, the Court remands this action to Customs for further investigation as to the Canadian identity of the subject merchandise.